**In re Frances Ann NIELSEN, Debtor.**

**Billy SCHRIMSHER, Plaintiff,**

**v.**

**Frances Ann NIELSEN, Defendant.**

**In re Richard A. ROBSON, Debtor.**

**Billy SCHRIMSHER, Plaintiff,**

**v.**

**Richard A. ROBSON, Defendant.**

Bankruptcy Nos. 80–01019, 80–01020. Adv. Nos. 81–0747, 81–0748.

United States Bankruptcy Court, N.D. Alabama.

Sept. 13, 1985.

John W. Cooper, Mentone, Ala., for plaintiff.

Robert B. Rubin, Birmingham, Ala., for debtors.

## FINDINGS, CONCLUSIONS, AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction* —

Each of the above-styled cases was commenced by a voluntary petition of the named individual filed under title 11, chapter 11, United States Code. After no step toward a reorganization was taken for about a year and a half, each case was converted to a liquidation case under chapter 7 of said title 11. The cases are pending before the bankruptcy judges by an order of reference of the district court, entered after July 10, 1984.

In each case Billy Schrimsher has commenced an adversary proceeding against the debtor, seeking a money judgment and an adjudication that the debt evidenced thereby is not subject to the discharge granted to the debtor under 11 U.S.C. § 727(a). After a hearing upon a motion for summary judgment (Bankr.Rule 7056, F.R.Civ.P. 56) filed by the plaintiff, each proceeding is before the Court for a ruling on the motion. Except for the difference in the identities of the defendants and a difference in the corporate offices held by them, the pleadings and proof are the same in the two proceedings.

In the original complaint it was charged that the plaintiff was employed by a company of which the defendants were stockholders, directors, and officers, that they caused money deducted from his wages to pay medical insurance premiums under a group plan sponsored by the employer to be diverted and converted to the employer's uses and the insurance premiums to be not paid, and that, as a consequence, he was without medical insurance coverage of a large obligation incurred by him for medical treatment required for his child. Except for admitting the plaintiff's employment by the company, the defendant answered with a general denial. The plaintiff then amended his complaint to allege that:

> [s]aid transactions come within the purview of 29 USCS § 1001 et. seq. known as Employees Retirement Insurance Security Act (ERISA) and the Defendant at the time complained of was a fiduciary within the meaning of 29 USCS 1002(14)(21) and did participate in violations prohibited by 29 USCS 1006(a). [*sic*].

It was also alleged in the amendment that the plaintiff's claim is excepted from a bankruptcy discharge as provided in 11 U.S.C. § 523(a). Again, the defendant responded with a general denial. At a pretrial conference which followed, the plaintiff's attorney advised the Court and defendant's counsel that the provisions of only 11 U.S.C. § 523(a)(4) are relied upon for an adjudication of nondischargeability

of the plaintiff's claim. Each attorney then stated that he would file a motion for summary judgment. None was filed for over fifteen months and not until after a hearing on a rule by the Court to show cause, if any, as to why the adversary proceeding should not be dismissed, when plaintiff's counsel filed the motion for summary judgment now before the Court.

*Findings of Fact—*

Each motion rests in part upon affidavits of the plaintiff and John Whittington, Esquire, who served as attorney for the trustee in a bankruptcy case for the plaintiff's employer. The motion also rests upon the defendant's response to the plaintiff's request to the defendant for admissions of fact (Bankr.R. 7036, F.R.Civ.P. 36). From these, the bankruptcy judge finds the established facts, upon which the motion rests, as follows:

1. Plaintiff was employed by a corporation, as to which defendant Robson owned 45% of the capital stock and was president, and as to which defendant Nielsen owned 10% of the stock and was secretary-treasurer, and whose only other officers were two vice presidents;

2. During July and August, 1978, and earlier, portions of plaintiff's wages were withheld from him by his employer, for the agreed purpose of paying the premiums for plaintiff's participation in a group medical-insurance program sponsored by the employer for its officers and employees;

3. Due to a failure by the employer to remit the payments to the insurance underwriter, the coverage was cancelled as of July 1, 1978; and, thereafter, the employer did not avail itself of an opportunity open through September 15, 1978, to have the policy reinstated by paying all premiums due on or after July 1, 1978;

4. On August 9, 1978, plaintiff's son suffered a severe hand injury, requiring medical treatment for which the plaintiff became liable in the sum of $8,616.65;

5. As a result of the cancellation of the employer's medical-insurance plan, plaintiff was without insurance protection from the

expenses and was left to be sued for the major portion of them; and

6. The defendants were his employer's only officers who were residents in the locality of its business office, were both involved and familiar with matters relating to its medical-insurance programs for its officers and employees, and were responsible for and participants in the corporation's daily affairs.

*Conclusions by the Court—*

Section 523(a)(4) of title 11, relied upon for an adjudication of nondischargeability of plaintiff's claim, provides that an individual debtor is not discharged for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."

■ Plaintiff's attorney contends that the employer's medical-insurance plan was an "employee welfare benefit plan," as defined in 29 U.S.C. § 1002(1), of the Employee Retirement Income Security Act of 1974 or "E.R.I.S.A.," and that each defendant was a "fiduciary," as described in part (21)(A) of that section. Counsel then points to § 1109, dealing with liability for breach of a fiduciary duty, and to § 1132, on civil enforcement by a participant of rights or benefits under a plan. Plaintiff's counsel concludes that these statutes give plaintiff a cause of action against the defendants for the consequences of failure to apply deductions from his wages to payment of the medical-insurance premiums, that they were fiduciaries, and that his claim against them is thus excepted from their discharges as a debt "for fraud or defalcation while acting in a fiduciary capacity."

This conclusion cannot be sustained because the attempted leap from the statutorially-prescribed use of the word "fiduciary" in "E.R.I.S.A."[1] to the undefined meaning of the word in the bankruptcy statute[2] falls short of transposition's rim.

The Congress can write its own dictionary and often does, but broad competition with "Webster" is generally not intended. Enforced use of its definitions is generally limited to specified statutes. No inference may be correctly drawn that the prescribed use of the word "fiduciary" in the labor-law statute is to be its enforced meaning in the bankruptcy statute, where the word has a well-established meaning which does not include the defendants in the circumstances described here.

Also, the "E.R.I.S.A." sections relied upon appear to deal with the rights of a "plan" against an errant "fiduciary" and of a "participant" to enforce rights under a "plan." But, it is not necessary to decide whether, as claimed, the statute deals with the rights of the plaintiff against these defendants, because it does not appear that the defendants were "fiduciaries," as the term is used in 11 U.S.C. § 523(a)(4).

In "Norton," it is stated:

Only a fiduciary relationship founded on a technical or express trust leads to a nondischargeable liability. A resulting or constructive trust, i.e., a trust imposed by law because of the nature of the act, does not meet the requirements of Code § 523(a)(4). Therefore, although the law may designate a thief as a constructive trustee of the stolen property, the thief is not a fiduciary for purposes of this section.[3]

[Footnote references omitted.]

This text is fully supported by the principal authorities cited there: *Davis v. Aetna Acceptance Co.*[4] and *In re Angelle*,[5] from the Supreme Court and the Fifth Circuit, respectively.

■ Beyond the "E.R.I.S.A." theory of plaintiff's counsel lies the question of whether the undisputed facts of this adversary proceeding are sufficient to establish a debt for an "embezzlement or larceny."

---

1. 29 U.S.C. § 1002(21)(A).

2. 11 U.S.C. § 523(a)(4).

3. 1 Norton, Bankruptcy Law and Practice § 27.-46 (1981).

4. 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (construing the prior statute, Bankruptcy Act § 17a(4), 11 U.S.C. § 35, which was basically the same, in this regard).

5. 610 F.2d 1335 (5th Cir.1980) (construing the prior statute—see note 4).

These are the other acts on which an exception to discharge may be grounded under the provisions of § 523(a)(4) of the bankruptcy statute.

What is shown here is a bookkeeping deduction from the plaintiff's wages or, more accurately, a bookkeeping entry which reduced the amount of cash (or its bank-check equivalent) paid to the plaintiff for his wages earned. It reduced the amount of the employer's debt to the employee which was to be paid or satisfied by a cash payment or its equivalent. This was followed by the employer's failure to pursue an understanding with its employee that a portion of its wage debt to the employee equal to the "deduction" would be satisfied by its payment of the medical-insurance premium to the insurance carrier.

This default left that portion of the wage debt unpaid, and it breached the employer's obligation to the employee. It breached not only their agreement for payment of this portion of the wage debt but, necessarily, how it was to be paid. The result was cancellation of the plaintiff's medical-insurance protection and exposure to a large bill for his child's medical care.

As a result a wage claim is owed by the employer to the plaintiff. The employer should also be liable to him for the foreseeable consequences of its failure to pay the insurance premiums, i.e., his liability for the portion of the medical expenses which would have been covered by the medical insurance. The debtor-defendants were the flesh and blood of the corporate employer, were knowing participants in the breach of its duties to the plaintiff, and should be liable to him equally with the corporation.

This is not to say, however, that their liability to the plaintiff is a debt for "embezzlement or larceny." They were *pari delicto* with the employer; but it does not appear that the employer committed an "embezzlement or larceny" of the portion of the wages not paid to the insurance carrier. It did not pay a portion of the wage debt, but nothing came into being to constitute a *res* or thing to be converted to the employer's own use or to be stolen. There was a failure to pay or satisfy a portion of a debt (a breach of contract) and consequential damages to the plaintiff—not predictable, but foreseeable as a real possibility.

The facts established will not support a claim for theft of labor because it is not shown that the employer induced the plaintiff to work, while intending not to pay or otherwise satisfy part of the wage debt attributable to the labor.

The bankruptcy judge is unable to find that the facts established will support a judgment against either defendant which would be adjudged not discharged by virtue of the provisions of 11 U.S.C. § 523(a)(4), and the plaintiff's motion for summary judgment cannot be granted. It would be useless to enter judgment for the plaintiff on a debt the collection of which is prohibited by 11 U.S.C. § 524(a)(2) and when, perhaps, even entry of the judgment is thus prohibited.

Under this condition of the case, must the Court go further than a denial of the motion for summary judgment and enter a judgment of dismissal of the complaint and proceeding? Whether the Court *may* "grant summary judgment to a non-moving party" is a question answered in the affirmative in *Moore's Federal Practice*.[6]

Here, the plaintiff delivered the litigation into the hands of the Court for determination in what has the appearance of being the plaintiff's final, complete effort. Plaintiff's counsel stated complete reliance on § 523(a)(4).

It might be possible that facts sufficient to show a theft of labor could have been presented, but there is certainly a great difficulty of proof involved in reasonably establishing an employer's *prior*, larcenous intent not to pay a relatively small portion of a workman's wages. Also, one may wonder if the plaintiff might have a nondischargeable claim, under § 523(a)(6), "for willful and malicious injury by the debtor to another entity or to the property of

---

6. 6 Moore's Federal Practice ¶ 56.12 (2d ed., rel. No. 31–1976).

another entity," but there, again, the plaintiff has what is likely a very sizeable evidentiary burden of proving "malice" in the part played by the defendants in the failure of the plaintiff's employer to pay his insurance premiums.[7]

From the foregoing the bankruptcy judge concludes, as follows:

1. The plaintiff cannot recover on the complaints and facts presented to the Court by the motions for summary judgment, which are due to be denied;

2. Summary judgment should be granted to each defendant to the extent of an order dismissing the complaint; and

3. Summary judgment should be granted to each defendant by a self-executing order dismissing the adversary proceeding, with prejudice, in the event that no further pleading by the plaintiff has been filed therein, as of the fifteenth day after this order.

*Order and Judgment*

It is so Ordered by the Court.

7. *See generally* Norton, Bankruptcy Law and Practice § 27.53 (rel. 11–82).