In re Robert William **BRYANT** and wife, Margaret Ann **Bryant, Debtors.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 602; F.E. Bartram, Jr.; J.D. Cole; G.R. Preas; M.A. Cooper; D.F. Jones; and M.L. Morrow, Plaintiffs,**

v.

**Robert William BRYANT, Defendant.**

**Bankruptcy No. 286–20345.
Adv. No. 286–2081.**

United States Bankruptcy Court, N.D. Texas, Amarillo Division.

May 29, 1987.*

---

* This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

Patrick B. Mosley, Underwood, Wilson, Berry, Stein & Johnson, Amarillo, Tex., for the Union.

Wyatt L. Brooks, Culton, Morgan, Britain & White, Amarillo, Tex., for Bryant.

MEMORANDUM OF OPINION

JOHN C. AKARD, Bankruptcy Judge.

The Plaintiffs, International Brotherhood of Electrical Workers, Local Union No. 602 (Union) and individual members of the Union seek to have certain obligations of Sosebee Electric Company of Borger, Inc. (Sosebee) declared the personal obligations of Robert William Bryant (Bryant) to be non-dischargeable in his personal bankruptcy proceeding.

*Facts*

Sosebee is a corporation of which Bryant was Manager, President and majority shareholder. On June 1, 1985, Bryant, as an officer of Sosebee, signed a letter of assent on behalf of Sosebee agreeing to comply with the terms and conditions of employment contained in the "INSIDE

AGREEMENT between ELECTRICAL CONTRACTORS of AMARILLO AND VICINITY and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL NO. 602, Amarillo, Texas, June 1, 1985—May 31, 1986" (Inside Agreement). This Agreement was negotiated by the Panhandle Chapter of the National Electrical Contractors Association of which Sosebee was a member. The Inside Agreement provided that the employees would be paid weekly and that 2% of the wages to be paid to the Union as Union dues and 10% of the wages to be placed in a separate bank account controlled by the Union for a vacation fund would be deducted from each employee's paycheck. Apparently there was a prior agreement with similar provisions because Bryant testified that Sosebee performed in accordance with the contract from April, 1985 to October, 1985.

The financial problems of Sosebee became acute in October, 1985 and continued until the business closed at the end of December, 1985. Bryant testified that from October, 1985 until the closing, the business paid only those items necessary to keep it open, consisting of net wages to employees, utilities, truck expenses and supplies necessary for ongoing contracts. Bryant discussed these problems with Fred Bartram, the Union Steward on several occasions and assured Bartram that the Union dues and vacation allowance would be paid out of profits which Sosebee expected from pending contracts. Bryant stated that Sosebee expected sufficient income from pending contracts to pay all of its bills. Those expectations did not materialize.

The employees' payroll stubs showed gross wages and "deductions" for FICA tax, income tax, Union dues and vacation fund. Thus, the records received by the employees indicated that the dues and vacation fund were being withheld. The Union, however, knew that those funds were not remitted. Sosebee's records contained a complete accounting of the amounts due. A total of $1,778.53 for dues was not remitted to the Union and $1,650.73 was not remitted to the vacation fund, making $3,429.26 the total due by Sosebee.

The Union asserts that because of his position with Sosebee, Bryant controlled Sosebee and allowed it to pay other obligations when the Union dues and vacation fund were due. Therefore, the Union asserts that the $3,429.26 is a nondischargeable debt in Bryant's personal bankruptcy pursuant to §§ 523(a)(4) and (6) of the Bankruptcy Code.[1]

*Section 523(a)(4)*

Debts for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny are excepted from Discharge under § 523(a)(4).

The first question is: Was Bryant acting in a fiduciary capacity with respect to the employees of Sosebee? There is no evidence that either Sosebee or Bryant in any way segregated or set apart funds listed as deductions on the employee pay stubs. This was merely a bookkeeping entry which was properly reflected as an unpaid liability on the books of Sosebee. Only a fiduciary relationship founded on a technical or express trust leads to a nondischargeable liability. The fiduciary capacity refers to trusts existing before the wrongs creating the excepted liabilities are committed and not to trusts *ex maleficio* arising from the wrongs themselves. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (construing the prior statute, Bankruptcy Act § 17(a)(4) (11 U.S.C. § 35), which was basically the same in this regard); *Angelle v. Reed (Matter of Angelle)*, 610 F.2d 1335 (5th Cir. 1980); *Donohoe v. Hurbace (In re Hurbace)*, 61 B.R. 563 (Bankr.W.D.Tex.1986).

The fact that the Employee Retirement Income Security Act of 1974 (ERISA) makes an employer a "fiduciary" under an

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to Section numbers are to Sections in the Bankruptcy Code. The Complaint which was filed by the Union also sought to deny Bryant's Discharge under §§ 727(a)(2) and (5).

Discovery subsequent to the filing of the Complaint apparently convinced the Union that it could not secure a denial of Bryant's Discharge because these grounds were not mentioned in the Pretrial Order.

Employee Welfare Benefit Plan, does not raise the employer's status to a fiduciary for bankruptcy discharge purposes. *Schrimsher v. Nielsen (In re Nielsen),* 53 B.R. 289 (Bankr.N.D.Ala.1985). In *Nielsen* the employer withheld funds for the agreed purpose of paying group medical insurance from the employee's wages. However, the employer did not remit the funds to the insurance company and the policy was cancelled. After cancellation, one of the employees had a substantial medical bill. The employee sought to have the debt declared nondischargeable on the grounds that the employer was a fiduciary under § 523(a)(4). The Court found, however, that a fiduciary relationship did not exist.

■ Embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Graziano,* 35 B.R. 589, 594 (Bankr.E. D.N.Y.1983). It requires a showing of appropriation for Defendant's own benefit with the intent to defraud. *Bailey v. James (In re James),* 42 B.R. 265, 267 (Bankr.W.D.Ky.1984). Larceny is the "fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graziano, supra* at 594. In the instant case no funds were set aside. Consequently, Bryant took no funds with intent to use them for his personal benefit.

■ If Sosebee had wholly failed to pay wages, the employees would have a wage claim entitled to priority under § 507(a)(3).[2] The failure to pay wages gives rise to such a claim and is not embezzlement or larceny. The fact that Sosebee chose to pay a portion of the wages should not cause the remaining balance to rise

from a wage claim one for embezzlement or larceny.[3] *Nielsen, supra.*

### Section 523(a)(2)

Debts for money obtained by false pretenses, a false representation, or actual fraud are declared nondischargeable by § 523(a)(2)(A).

The Union points out that it has long been the law in Texas that a corporate agent knowingly participating in a tortious or fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation. In these circumstances, it is not necessary that the corporate veil be pierced. *Leyendecker & Associates, Inc. v. Wechter,* 683 S.W.2d 369 (Tex.1984); *Barclay v. Johnson,* 686 S.W.2d 334 (Tex.Civ.App.—Houston [1st Dist.] 1985, no writ).

■ The contract obligated Sosebee to pay wages to its employees and, by deduction from those wages, to pay the Union dues and the vacation fund. A mere breach of a contractual duty does not constitute a tort. 86 C.J.S. § 2, *Torts* (1954).

■ The Union's approach is that Sosebee had sufficient funds to pay the entire payroll, that Sosebee used the funds in that regard, and then withdrew the funds earmarked for Union dues and the vacation fund for other purposes.[4]

Simply stated, the Union's view just does not comport with the facts of this case. Sosebee, like many other employers in a similar position, paid only the obligations which it was absolutely required to pay in order to keep operating. Mr. Bryant's testimony is uncontradicted on this point. Had fraud been intended, Sosebee would not have kept the complete records reflecting the amounts due the Union and the vacation fund.

---

**2.** It is to be noted that § 507(a)(3) specifically includes "claims for wages, salaries, or commissions, including *vacation,* severance, and sick leave pay." (Emphasis added.)

**3.** The Union would like its claims for dues and vacation pay to have the same treatment as monies withheld for payment of FICA and income taxes. However, the special treatment for these taxes arises by a statute (26 U.S.C.

§§ 6672, 7501) other than that for nondischargeability contained in § 523(a)(2) or (4) of the Bankruptcy Code.

**4.** The Union does not contest the fact that Sosebee had other obligations to the Union on behalf of its employees. Since they are not payroll deduction obligations, they are solely the responsibility of Sosebee and are not included in this Adversary Proceeding.

Additionally, Sosebee paid only that portion of payroll needed to keep the employees working—their take-home pay. This was done at a time when Sosebee was not paying other creditors and was only paying for utilities, truck expenses and supplies sufficient to carry on existing contracts. No fraud was intended or committed. The only possible false pretenses or false representations were the statements on the employees' payroll stubs. The Union was aware of these problems and Sosebee kept accurate records. Thus, Sosebee did not obtain money by false pretenses, false representations, or actual fraud.

### Conclusion

Bryant is not liable to the Union or to its members for wages which were not paid by Sosebee. Since the Court finds no fraud, embezzlement, or larceny, the Complaint of the Union will be denied.

Order accordingly.[5]

**5.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.