**In the Matter of Vernon Thompson MUSGROVE, Debtor.**

**Everett and Libby MORGAN, Plaintiffs,**

**v.**

**Vernon Thompson MUSGROVE, Defendant.**

**Bankruptcy No. N95–10489–WHD. Adv. No. 95–1023N.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Oct. 18, 1995.

T. Michael Flinn, Carrollton, Georgia, for Plaintiffs.

Jacquelyn L. Kneidel, Wood, Odom & Edge, P.A., Newnan, Georgia, for Debtor/Defendant.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in this matter is a Motion to Dismiss or in the Alternative Motion for Summary Judgment, filed by Vernon Thompson Musgrove (hereinafter "the Debtor"). The Debtor's motion comes as defense to a Complaint to Determine Dischargeability and Objection to Discharge filed by Everett Morgan and Libby Morgan (hereinafter "the Morgans"). As such, these matters constitute a core proceeding. See 28 U.S.C. § 157(b)(2)(I) & (O). The Court bases it decision upon the Findings of Fact and Conclusions of Law which follow.

### FINDINGS OF FACT

This controversy draws from a common association which the Debtor and Everett Morgan had with Eastern Utilities Construction Company (hereinafter "Eastern Utilities"), a now defunct Georgia corporation.

The Debtor served as both an officer and an equity owner of that closely held corporation. At the same time, the Eastern Utilities organization employed Mr. Morgan. Ultimately, Mr. Morgan left Eastern Utilities on January 10, 1992, and he then elected to continue health insurance coverage for himself and his wife, pursuant to COBRA. As part of that extended insurance plan, the Morgans delivered $252.13 each month to the husband's ex-employer so that their health coverage would not lapse. Eastern Utilities accepted these remittances but, rather than applying the funds to their designated purpose, the company diverted them to its own use. Subsequently, a family illness caused the Morgan's to incur $18,415.00 in medical expenses, a cost for which they consequently were uninsured.

Faced with these out of pocket expenses, on February 9, 1993, the Morgans commenced a state court action alleging counts of breach of contract, breach of fiduciary duty, negligence, fraud and RICO violations. Out of an apparent uncertainty as to the individual malfeasors involved, the Morgans named Eastern Utilities Company as a defendant, as well as the individuals "John Doe I" and "John Doe II." [1] Ultimately, the state court ruled in favor of the plaintiffs on all counts, entering a judgment for $31,500.00 against the named defendants.[2] The Morgans, however, never filed an amendment so as to substitute actual parties for the two "John Doe" defendants.

Prior to satisfaction of the Morgans' judgment, Eastern Utilities closed its doors. In that same span of time, the Debtor began discussions with the Morgans and their attorney regarding the possibility of his assuming personal responsibility for the judgment entered against Eastern Utilities. Then, on March 2, 1995, the Debtor filed a petition commencing his present bankruptcy case. As part of that filing, the Debtor listed the Morgans in his schedule of creditors, describing their claim only as "fixed and liquidated."

---

1. Although, as Eastern Utilities registered agent, the Debtor most likely was served in this action and thereby given notice of its pendency, he was not personally named as a defendant.

2. The state court judgment included an award of $15,000.00 in compensatory damages, $10,000.00 in punitive damages, and $6,500.00 in attorney's fees.

The Morgans now have undertaken this adversary proceeding to determine the dischargeability of the debt owed to them by the Debtor and to object to the Debtor's discharge in bankruptcy. In short, the Morgans contend that, as a fiduciary who has committed fraud or defalcation, the Debtor owes them a non-dischargeable debt under 11 U.S.C. § 523(a)(4). In response to the Morgan's complaint, the Debtor first denies that he bears any personal obligation or debt in favor of these parties. In support of that fact, the Debtor points out that the state court action and resulting judgment nowhere referred to him personally. Alternatively, the Debtor reasons that, if in fact he owes any debt to the Morgans, that debt should not be declared non-dischargeable because he does not qualify as a "fiduciary" for the purposes of section 523(a)(4).

## CONCLUSIONS OF LAW

### I. Speaking Motions and the Standard for Summary Judgment.

■ The debtor has chosen to support his present Motion to Dismiss with affidavits, thereby drawing the Court's attention to matters beyond the scope of pleadings themselves. To the extent that the Debtor presents such a "speaking motion," the Court deems it proper to consider the proffered evidence and apply traditional summary judgment standards to its analysis. *See* Fed. R.Civ.P. 12(b) (applicable in bankruptcy under Fed.R.Bankr.P. 7012); *see also Jones v. Automobile Ins. Co. of Hartford, Conn.,* 917 F.2d 1528, 1531–32 (11th Cir.1990) (discussing Rule 12(b) and the Court's discretion regarding the consideration of matters outside the pleading).

■ In accordance with Federal Rule of Civil Procedure 56 (applicable to bankruptcy under Fed.R.Bankr.P. 7056), this Court will grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing the right of summary judgment, *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982), and the Court will read the opposing party's pleadings liberally. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

■ In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). The moving party must identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, the party opposing the motion must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Martin v. Commercial Union Ins. Co.,* 935 F.2d 235, 238 (11th Cir.1991).

### II. The Existence of a "Debt."

■ In accordance with its common usage, the Bankruptcy Code defines the term "debt" as "liability on a claim." 11 U.S.C. § 101(12). Conversely, the term "claim" means a—

\*    \*    \*    \*    \*    \*

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not

such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

\* \* \* \* \* \*

11 U.S.C. § 101(5). Thus, reading sections 101(12) and 101(5) coextensively, the term "debt" refers to any obligation capable of enforcement against the debtor. *Penn. Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) (citing H.R.Rep. No. 95–595, p. 309, U.S.Code Cong. & Admin.News 1978, p. 6266).

In apparent reliance upon the above-mentioned standard, the Debtor contends that he owes no debt to the Morgans because the state court judgment did not name him individually, and, as such a non-party, he may not be subjected to the enforcement of that judgment. Rather, argues the Debtor, the Morgans obtained a meaningless "John Doe" judgment and nothing more. The Court has

serious doubts regarding that argument's ability to support a motion for summary judgment on the question of whether any "debt" exists.[3]

▮ Moreover, the Court points out that, as part of his bankruptcy petition, the Debtor listed the Morgans as unsecured creditors of his estate by virtue of a "fixed and liquidated" claim. This entry in the Debtor's schedules, standing alone, constitutes a judicial admission that he does in fact owe a debt to the Morgans. *See In re Standfield*, 152 B.R. 528, 531 (Bankr.N.D.Ill. 1993) (verified schedules and statements may give rise to evidentiary admissions) (citations omitted); *see also. In re Gervich*, 570 F.2d 247, 253 (8th Cir.1978) (schedules may create judicial admission of debt's existence); *In re Leonard*, 151 B.R. 639, 643 (Bankr.N.D.N.Y. 1992) (finding that debtor's schedule entry created admission of debt). Thus, by failing to qualify the schedule's description so as to include the term "disputed," the Debtor has

---

**3.** The Court acknowledges that, while Georgia courts permit the use of "John Doe" pleading, a standard similar to that of the federal courts governs such maneuvers. *Sims v. American Cas. Co.*, 131 Ga.App. 461, 481–83, 206 S.E.2d 121 (1974). Consequently, when a plaintiff ultimately fails to discover the identity of an involved party or neglects to include them in the action by amendment, the resulting "John Doe" judgment creates a "paper tiger" of sorts. *See Allstate Ins. Co. v. Duncan*, 218 Ga.App. 552, 554, 462 S.E.2d 638, 641 (1995) ("the plaintiff has in no meaningful sense either served or obtained a judgment against the tortfeasor"). The Court, therefore, agrees with the Debtor that, in and of itself, the state court's judgment against "John Doe I" and "John Doe II" did not generate an enforceable obligation for the Debtor.

To the extent, however, that the Debtor has relied solely upon this point as proof that no "debt" exists, the Court feels that he has missed the mark. The "John Doe" aspects of the state court judgment merely constitute one means by which the Debtor may incur an enforceable obligation in this matter. Indeed, the state court judgment may merely present a starting point for this Court's analysis of whether the Morgans hold a claim that may be enforced against the Debtor individually. *See Moore v. Gill (In re Gill)*, 181 B.R. 666, 670 (Bankr.N.D.Ga.1995) (Drake, B.J.) (discussing the inapplicability of claim preclusion to matters which could not have been litigated in the first action).

Under Georgia law, a corporate officer or director who knowingly directs or participates in

corporate malfeasance thereby becomes personally liable for that corporate wrong. *WMH v. Thomas*, 195 Ga.App. 61, 65, 392 S.E.2d 539 (1990) (citing *Alexie, Inc. v. Old South Bottle Shop Corp.*, 179 Ga.App. 190, 193–94, 345 S.E.2d 875 (1986)). Here, the existence of a corporate fraud was actually litigated, determined and necessary to a state court action in which Eastern Utilities, a party in privity with the Debtor, had a full and fair opportunity to litigate. As such, as a matter of collateral estoppel, it stands resolved in this case that Eastern Utilities committed fraud and various other legal wrongs against the Morgans. *See Gill*, 181 B.R. at 671–72. If, therefore, the facts were to reveal that the Debtor directed or participated in the corporation's acts, personal liability would attach and he would owe a "debt" to the Morgans.

In a similar fashion, the Court might find it appropriate to "pierce the corporate veil" and make the corporation's judgment liability transfer to the Debtor himself. *See Derbyshire v. United Builders Supplies*, 194 Ga.App. 840, 843–44, 392 S.E.2d 37 (1990). Specifically, if the facts were to establish that the Debtor controlled Eastern Utilities and used its corporate form to defeat justice, perpetrate a fraud, promote crime, or evade contractual/tort responsibility, then the Court might treat the corporation's liability as his own. *See U.S. v. Fidelity Capital Corp.*, 920 F.2d 827, 836 (11th Cir.1991). The same result might also come about if the Court were to find that the Debtor used the corporation as his "alter ego." *Id.* at 836–38.

waived the right to contest the debt's existence. *See In re McMonagle,* 30 B.R. 899, 903 (Bankr.D.S.D.1983) (holding that a debtor may avoid his schedules creating an admission of debt by including the term "disputed" in the debt's description).[4]

## III. The Applicability of Section 523(a)(4).

In the second leg of his argument, the Debtor reasons that, even if he in fact owes a debt to the Morgans, that obligation should not be declared non-dischargeable pursuant to section 523(a)(4). Code section 523(a)(4) provides in pertinent part, "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt.... for fraud or defalcation while acting in a fiduciary capacity...." 11 U.S.C. § 523(a)(4). Thus, to support a conclusion of 523(a)(4) non-dischargeability, the Court must find (1) that the Debtor acted as a fiduciary; and (2) that, in the course of performing those duties, he committed an act of fraud or defalcation.

### A. *The Debtor as a "Fiduciary."*

■■■■ Section 523(a)(4)'s "fiduciary" standard traces a boundary which excludes many common law applications of that term. *In re Cooper,* 30 B.R. 484 (B.A.P. 9th Cir. 1982). Specifically, as used in section 523(a)(4), the term "fiduciary" connotes an expressed or technical trust, but it does not include an ex maleficio trust, arising only from the act of malfeasance itself. *Id.* As a result of this important distinction, courts have devoted many pages to further distinguishing what exactly constitutes an "expressed or technical trust." *See, e.g., In re*

*Johnson,* 691 F.2d 249 (6th Cir.1982); *In re Romero,* 535 F.2d 618 (10th Cir.1976); *In re Kawczynski,* 442 F.Supp. 413 (W.D.N.Y. 1977). Notwithstanding these efforts, however, the issue remains less than a model of clarity.

In the instant case, the parties appear to acknowledge that the extent of the Debtor's "fiduciary" duties will turn on the applicability of the Employment Retirement Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988), as amended by the Comprehensive Omnibus Budget Reconciliation Act of 1986 (COBRA), Pub.L. NO. 99–272, 100 Stat. 82. More specifically, the question becomes whether that statute's reference to "fiduciary" duties of those holding discretionary authority over "employee welfare benefit plans" will translate to create a "fiduciary duty" on the part of the Debtor for the purposes of section 523(a)(4) of the Bankruptcy Code.[5]

Here, the Debtor relies heavily upon two cases which have answered that question in the negative. The first of those decisions, *Schrimsher v. Nielsen (In re Nielsen),* 53 B.R. 289 (Bankr.N.D.Ala.1985), resolved the matter with the following analysis:

\*    \*    \*    \*    \*    \*

[T]he attempted leap from the statutorily-prescribed use of the word "fiduciary" in "E.R.I.S.A." to the undefined meaning of the word in the bankruptcy statute falls short of transposition's rim. The Congress can write its own dictionary and often does, but broad competition with "Webster" is generally not intended. Enforced use of its definitions is generally limited to specified statutes. No inference may be correctly drawn that the prescribed use of the word "fiduciary" in the labor-law stat-

---

4. Furthermore, to the extent that the Debtor's judicial admissions resolve the "debt" question, the Court need not address whether ERISA and COBRA, discussed infra, preempt the Morgan's state law claims and supplant them with causes of action to be brought directly under those statutes. *See* 29 U.S.C. § 1144 (declaring the scope of preemption); *see also* 29 U.S.C. § 1132(a)(1)(B).

5. ERISA provides, in pertinent part:
   \*    \*    \*    \*    \*    \*
   a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary

authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002.

ute is to be its enforced meaning in the bankruptcy statute, where the word has a well-established meaning which does not include the defendants in the circumstances described here.

\* \* \* \* \* \*

*Id.* at 291. Subsequently, another court addressed the same issue in *Intl. Brotherhood of Elec. Workers, Local Union No. 602 v. Bryant (In re Bryant),* 73 B.R. 956 (Bankr. N.D.Tex.1987). The *Bryant* court, however, provided no analysis on the matter and instead simply cited *Nielsen* for its conclusion that an ERISA "fiduciary" did not qualify as a section 523(a)(4) "fiduciary." *Id.* at 958–59.

▮▮▮▮ The Court finds a subtle inconsistency within the above-quoted passage from *Nielsen,* an inconsistency which reveals that holding's tragic flaw. Specifically, in the same breath that the *Nielsen* decision observed the complete absence of a Bankruptcy Code definition for "fiduciary", that court found the term to have a "well-established" meaning which does not draw from external sources. This Court respectfully disagrees. In fact, due to the very absence of a Bankruptcy Code definition for "fiduciary" and the consequent difficulty in evaluating that term, courts necessarily must look to other statutes to determine what circumstances trigger a "fiduciary duty." Thus, "a long line of case authority has held that an express or technical trust may be created by a statute which expressly imposes fiduciary obligations on a party." *Hayton v. Eichelberger (In re Eichelberger),* 100 B.R. 861, 864 (Bankr. S.D.Tex.1989) (Mahoney, B.J.) (citations omitted). Indeed, as a matter of tradition, courts have held that, if a statute sets forth specific fiduciary duties and identifies the "res" of a trust arising prior to the act which created the debt, section 523(a)(4)'s criteria will be met. *Johnson,* 691 F.2d at 253; *Carey Lumber Co. v. Bell,* 615 F.2d 370, 372 (5th Cir.1980); *Romero,* 535 F.2d at 621–22.

▮▮▮▮ In the instant case, ERISA clearly sets out a series of fiduciary duties related to benefit plan administration. *See* 29 U.S.C.

§ 1161(a) (directing that continuation coverage be provided); *see also* 29 U.S.C. §§ 1022, 1024(b)(1) (requiring that a detailed plan description be given to all participants and mandating that each beneficiary be notified of any material changes). Furthermore, the statute sets out an easily identifiable res, the "employee welfare benefit plan" itself. *See* 29 U.S.C. § 1002(1) (defining the term "employee welfare benefit plan"). Lastly, any and all fiduciary duties related to an ERISA plan necessarily arise at the time of the plan's creation, well before any individual debt to a specific beneficiary. *See* 29 U.S.C. § 1002(21)(A); *see also Payonk v. HMW Indus., Inc.,* 883 F.2d 221, 225 (3d Cir.1989) (discussing when ERISA's fiduciary duties attach). Thus, one who qualifies as an ERISA "fiduciary" also should fall within the type of "fiduciary" contemplated by Bankruptcy Code section 523(a)(4). *See Reich v. Daniels (In re Daniels),* No. 93–1332, 1994 WL 470213 at \*4–7, (Bankr.D.Mass. Apr. 25, 1994); *In re Ardito,* No. 888–80114–20 1988 WL 324200 at \*3 (Bankr.E.D.N.Y. Sept. 20, 1988). As a consequence of that fact, if the Debtor may be shown to have held fiduciary duties pursuant to ERISA, which he breached through an act of fraud or defalcation, his debt stands non-dischargeable in bankruptcy.[6]

## B. *An Act of Defalcation or Fraud.*

▮▮▮▮ As applied in section 523(a)(4), the term "defalcation" casts a much broader net than does ordinary "fraud." Indeed, the *Eichelberger* court noted,

Defalcation as that term is used in 11 U.S.C. § 523(a)(4) may result from a mere deficit resulting from the debtor's misconduct. *In re Janikowski,* 60 B.R. 784, 789 (Bankr.N.D.Ill.1986). It is no defense that the debtor derived no personal gain and defalcation may result through the debtor's negligence rather than his misconduct. *In re Cowley,* 35 B.R. 526, 529 (Bankr.D.Kan. 1983). Defalcation has been defined as broadly as the failure by a trustee to properly account for funds entrusted to him. *Carey Lumber Co. v. Bell,* 615 F.2d 370,

---

6. The Court acknowledges that this conclusion isolates a material question of fact to be resolved at trial. Specifically, the parties must address whether the Debtor held such discretionary authority over the Eastern Utilities plan as would make him an ERISA "fiduciary."

376 (5th Cir.1980); *In re Borbidge,* 90 B.R. 728, 736 (Bankr.E.D.Pa.1988).

*Eichelberger,* 100 B.R. at 866. Bearing these principles in mind, the Court has no doubt that an act of defalcation occurred in this case. The parties appear to agree that Eastern Utilities failed to account for the Morgans' premiums and to direct them to their proper use. If, at trial, the facts demonstrate that the Debtor held a fiduciary duty with regard to Eastern Utilities' health plan, he therefore will have committed a defalcation within the meaning of section 523(a)(4). *See Ardito,* 1988 WL 324200 at *3.

### CONCLUSION

The Court finds that the Debtor has failed to surmount his initial summary judgment burden. As a matter of law, the Court concludes that the Debtor in fact does owe a "debt" in bankruptcy to the Morgans and that an ERISA "fiduciary" will qualify as a "fiduciary" for the purposes of 11 U.S.C. § 523(a)(4). A question of fact remains as to whether, under the facts of this case, the Debtor held such discretionary authority as would make him a "fiduciary" under the terms of ERISA. In view of these findings, the Debtor's Motion to Dismiss or in the Alternative Motion for Summary Judgment hereby is **DENIED.**

**IT IS SO ORDERED.**