**In re Gregory Kim ENGLEMAN, Debtor.**

**Mo–Kan Iron Workers Pension Fund, et al., Plaintiffs,**

v.

**Gregory Kim Engleman, Defendant.**

**Bankruptcy No. 01–42450. Adversary No. 01–4125.**

United States Bankruptcy Court, W.D. Missouri.

Nov. 29, 2001.

David J. Barry, Michael G. Newbold, Arnold, Newbold, Winter, Jackson & Jacoby, Kansas City, MO, for plaintiffs.

John Joseph Cruciani, Robert D. Berger, Lentz & Clark, PA, Overland Park, KS, for defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Chief Judge.

Plaintiff Mo–Kan Iron Workers Pension Fund, et al. (the Union Funds) objected to the discharge of its debt, pursuant to 11 U.S.C. § 523(a)(2)(A) and 523(a)(4). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will find that debtor/defendant Gregory Kim Engleman did not act in a fiduciary capacity to the Union Funds, therefore, the debt is dischargeable.

## ISSUE PRESENTED

Engleman, the sole proprietor of a construction company, failed to make the employer's contributions to certain benefit funds as required by the collective bargaining agreement. The Employee Retirement Income Security Act of 1974 (ERISA) provides that an employer is a fiduciary of benefit funds. The Bankruptcy Code provides that a debt is nondischargeable if it results from some misconduct on behalf of a fiduciary as regards an express or technical trust. Does the provi-

sion in ERISA create the type of fiduciary relationship required by the Bankruptcy Code to make any failure to contribute a nondischargeable debt.

## DECISION

In order to create an express or technical trust, the parties to the trust must declare their intent to create the trust followed by the creation of the trust and a trust res. Statutory trusts are neither express nor technical trusts. For nondischargeability purposes, debtors act in a fiduciary capacity only when their actions involve express or technical trusts. Engleman, therefore, did not act in a fiduciary capacity, and the debt is dischargeable.

## FACTUAL BACKGROUND

Engleman was the sole proprietor of a business known as Associated Construction Services (Associated). On January 5, 1998, Associated entered into the Iron Workers Contract Stipulation (the Contract) with the Mo–Kan Iron Workers Union.[1] Pursuant to the Contract, Associated agreed to be bound by the terms of the current, and all subsequent, collective bargaining agreements, unless it gave notice of an intent to terminate the Contract.[2] On October 31, 1999, Associated ceased doing business, and on May 23, 2001, Engleman filed a Chapter 7 bankruptcy petition. On his bankruptcy schedules he listed a debt to the Union Funds in the amount of $73,000.00. The Union Funds then filed this adversary proceeding objecting to the discharge of its debt.

The Union Funds claim that the Contract imposed upon Engleman, as the employer, a fiduciary duty to contribute to the Mo–Kan Iron Worker's Pension Fund,

the Mo–Kan Iron Worker's Annuity Plan, the Mo–Kan Iron Worker's Welfare Fund, and the Mo–Kan Iron Worker's Apprenticeship, Training & Education Fund while the Contract was in full force and effect, that his duty to contribute is an asset of those plans, that his failure to make the contributions is a defalcation, and that the debts resulting from such defalcation are nondischargeable.

Engleman claims that the Contract required him to make the contributions, but did not create a fiduciary obligation to do so, therefore, the debt is dischargeable. The parties agreed, by Joint Stipulation, that this Court would determine, as a matter of law, the nature of Engleman's obligation and the dischargeability of any debt found owning to the Union Funds. They also agree that there is a dispute as to the exact amount of the debt, which this Court must resolve if the debt is found to be nondischargeable.

## DISCUSSION

The Union Funds' Complaint objected to the discharge of its debt pursuant to section 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code (the Code). The parties agree that Engleman is the sole proprietor of Associated, and they do not dispute that any liability of Associated flows through to Engleman in this dispute. I will, therefore, refer only to Engleman in this discussion. The dischargeability of a debt is a matter of federal law governed by the terms of the Code.[3] The pleadings filed in support of the Complaint, however, do not offer any evidence of the 523(a)(2)(A) cause of action. I will deal briefly with that contention before discussing section

---

1. Ex. # E.

2. *Id.*

3. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991); *Bast v. Johnson (In re Johnson),* 174 B.R. 537, 540 (Bankr.W.D.Mo.1994).

523(a)(4). Section 523(a)(2)(A) excepts from discharge any debt resulting from debtor's fraud or misrepresentation:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt
>
> . . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.[4]

The United States Supreme Court holds that section 523(a)(2)(A) of the Code encompasses common law misrepresentation or actual fraud.[5] To prove that a debt for actual or common law fraud is nondischargeable a creditor must prove the following:

(1) the debtor made a false representation;

(2) at the time the representation was made the debtor knew it was false;

(3) the debtor subjectively intended to deceive the creditor at the time he made the representation;

(4) the creditor justifiably relied upon the representation; and

(5) the creditor was damaged.[6]

There is no evidence before this Court that Engleman did not intend to make the required contributions to the Union Funds at the time he entered into the Contract.

Since the Union Funds failed to satisfy their burden of proving that basic element of a section 523(a)(2)(A) claim, I will find in favor of the Engleman as to that cause of action.

Section 523(a)(4), as relevant here, excepts from discharge a debt resulting from fraud or defalcation while acting in a fiduciary capacity:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity.[7]

As discussed above, the Union Funds failed to prove that Engleman acted with fraudulent intent. In order, therefore, to find the debt is nondischargeable, I must first find that Engleman, as an employer, acted in a fiduciary capacity to the Union Funds. If I so find, I must then find that he committed defalcation while acting in that capacity.

 In a bankruptcy proceeding the term fiduciary is narrowly construed to apply only to technical or express trusts "held by the fiduciary on behalf of the creditor, which did not arise out of the action that created the fiduciary relationship."[8] In other words, it takes more than a "merely contractual relationship" to establish the existence of a fiduciary rela-

---

**4.** 11 U.S.C. § 523(a)(2)(A).

**5.** *Field v. Mans*, 516 U.S. 59, 70, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995).

**6.** *AT & T Universal Card Servs. Corp. v. Feld (In re Feld)*, 203 B.R. 360, 365 (Bankr.E.D.Pa. 1996).

**7.** 11 U.S.C. § 523(a)(4).

**8.** *First Options of Chicago v. Kaplan (In re Kaplan)*, 162 B.R. 684, 703 (Bankr.E.D.Pa. 1993). *See also, International Brotherhood of Electrical Workers, Local Union No. 602 v. Bryant (In re Bryant)*, 73 B.R. 956, 958 (Bankr.N.D.Texas 1987) (holding that a bookkeeping entry properly reflecting an unpaid liability on the part of an employer did not create a trust obligation).

tionship.[9] The parties must declare their intent to create a trust followed by the creation of the trust and a trust res.[10] Moreover, statutory trusts are neither express nor technical trusts.[11] "A statute alone cannot, in the absence of the parties' expressed intention, create an express or technical trust." [12] The parties agree that the Union Funds are all qualified under the federal statute known as ERISA. The Union Funds argue that the ERISA statute creates a fiduciary relationship with an employer, and that Engleman, therefore, became a fiduciary of the Union Funds when he signed the Contract. And, some Courts have found that ERISA creates a fiduciary relationship between an employer and the beneficiaries of a pension plan when the employer manages, or mismanages, pension funds to which both it and its employees contribute.[13] That is not the case here. The parties agree that Engleman withheld employee contributions to the Union Funds and deposited those contributions in the Union Funds as required. The parties also agree that the Union Funds managed the funds and Engleman had no control over the contributions once they were deposited in the Union Funds. The only monies at issue here are the monies Engleman failed, as an employer, to contribute. The obligation to contribute arose from the Contract. That Contract created a contractual obligation or relationship between Engleman and the Union Funds. Engleman admits he owes a debt to the Union Funds for the monies he failed to contribute. Engleman and the Union Funds, therefore, have a debtor/creditor relationship. A debtor/creditor relationship, without more, does not give rise to a fiduciary relationship.[14] A fiduciary relationship requires, at a minimum, the performance of technical duties other than the payment or segregation of money.[15]

In this case Engleman had no duties to perform, other than the duty to pay money to the Union Funds. He had no control of the monies once the deposits were made. The only proof offered by the Union Funds of a fiduciary relationship between them and Engleman is the language in ERISA that purports to make an employer the fiduciary of a retirement plan. But, language in ERISA that states an employer is a fiduciary of the retirement fund does not raise the employer's status to that of a fiduciary for bankruptcy discharge purposes.[16] I find, therefore, that Engleman was not acting in the fiduciary capacity required by 11 U.S.C. § 523(a)(4) when he

---

9. *E.W. Wylie Corporation v. Montgomery (In re Montgomery)*, 236 B.R. 914, 922 (Bankr. D.N.D.1999).

10. *Id.*

11. *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 162 (Bankr.D.Md.1999).

12. *Id.*

13. *See, e.g., Moss v. Miller (In re Miller)*, 133 B.R. 405, 409 (Bankr.S.D.Ohio 1991) (holding that a pension fund administrator violated the fiduciary duties described in the pension fund trust agreement when he invested in his own operating oil company $22,900 from the pension fund).

14. *The Cadle Co. II, Inc. v. Hartman (In re Hartman)*, 254 B.R. 669, 673 (Bankr.E.D.Pa. 2000) (holding that without separate and express trust language, a security agreement creates no more than a debtor/creditor relationship); *Mabank Bank v. Grisham (In re Grisham)*, 245 B.R. 65, 71 (Bankr.N.D.Texas 2000) (holding that absent a written trust agreement, or proof of a trust relationship, a bank had a debtor/creditor relationship only, and section 523(a)(4) of the Code was inapplicable).

15. *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 164 (Bankr.D.Md.1999).

16. *Bryant*, 73 B.R. at 958–59.

failed to make contributions to the Funds. I need not reach the issue of defalcation, which can be defined as either embezzlement or the failure to meet an obligation,[17] because no defalcation can arise unless there is a pre-existing fiduciary relationship such as to render a debt nondischargeable.[18] The debt is, thus, dischargeable.

An Order in accordance with this Memorandum Opinion will be entered this date.

17. **Black's Law Dictionary** 173 (Bryan Garner ed., 1996).

18. *Montgomery,* 236 B.R. at 922.