**In re Bradley M. GUNTER, Cheree K. Gunter, Debtors.**

**Trustees of the Colorado Ironworkers Pension Fund, et al., Plaintiffs,**

**v.**

**Bradley M. Gunter, Individually and Cheree K. Gunter, Individually, Defendants.**

**Bankruptcy No. 02–29808 EEB.**

**Adversary No. 03–1178 ABC.**

United States Bankruptcy Court, D. Colorado.

Dec. 24, 2003.

Timothy J. Parsons, Esq., Dean C. Heizer, Esq., Miranda K. Hawkins, Esq., Gorsuch Kirgis LLP, Denver, CO, for Plaintiffs.

Stuart G. Barr, Esq., Denver, CO, for Defendants.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

A. BRUCE CAMPBELL, Bankruptcy Judge.

THIS MATTER is before the Court on plaintiffs' Motion for Summary Judgment on their claims that they are owed from Bradley M. Gunter and Cheree K. Gunter ("Debtors") $291,747.56, and that this debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), as a "debt...for...defalcation while acting in a fiduciary capacity...." The debt is for amounts that were withheld by Debtors from employees' wages between August 1998 ad March 1999 and between December 1999 and March 2000. These amounts, pursuant to certain collective bargaining agreements and the Employee Retirement Income Security Act of 1974 ("ERISA"), were to have been deposited with plaintiff trustees of certain ironworkers multi-employer pension and welfare benefit funds, namely the Colorado Ironworkers Pension Fund, the Colorado Statewide Ironworkers (Erector) Joint Apprenticeship and Training Fund, the Ironworkers Welfare Plan of Colorado, and the Colorado Iron Workers Annuity Trust Fund (the "Funds").

In their summary judgment motion, plaintiffs contend that the following facts are undisputed: Debtors first owned and controlled and later succeeded individually to, and personally did business as, Gunter Steel Erection, Inc. ("Gunter Steel"); the total unpaid employee Funds contributions

in issue (net of union dues) is $291,747.56;[1] at each of the times the subject Funds contributions were withheld from employee paychecks, amounts in excess of these sums were available to Debtors, were maintained unsegregated with other Gunter Steel business funds, and were used to pay other creditors of Gunter Steel; and Debtors were at all relevant times in control of the finances of Gunter Steel.

Plaintiffs argue, as a matter of law, on these facts the resulting debt arises from Debtors' defalcation in a fiduciary capacity imposed under ERISA, and thus, the debt is nondischargeable under Bankruptcy Code § 523(a)(4). Debtors do not contest the subject debt nor do they dispute that they controlled sufficient funds to have paid plaintiffs; instead, these funds were used to pay other legitimate operating expenses of Gunter Steel in an effort to keep its doors open. Debtors refute plaintiffs' argument by maintaining, as a matter of law, that the debt to plaintiffs merely reflects an unfulfilled contract obligation to pay employee compensation and involves no trust *res*, fiduciary duty, or breach thereof. Each side cites federal case law in support of its position.[2]

■ Not all debts arising from fiduciary defalcations are non-dischargeable under § 523(a)(4). *In re Young*, 91 F.3d 1367 (10th Cir.1996). For § 523(a)(4) to come into play, the debt must result from a fiduciary's defalcation under an "express or technical trust" i.e., one involving the entrusting of money or other property to a fiduciary for the benefit of another. *Id.* at 1371–72.

■ Debts resulting from defalcation under trusts and fiduciary duties arising by operation of statute *may* be non-dischargeable under 11 U.S.C. § 523(a)(4). Perhaps the most commonplace operation of § 523(a)(4) in Colorado involves statutory trust funds, paid under the state mechanics lien statute to a contractor for the benefit of other potential mechanics lienors, and misapplied by the contractor.

■ All debts arising from statutory trusts, however, do not come within the purview of § 523(a)(4). For such a trust to do so, first it must have a *res* of property or money entrusted to the "trustee," such as the funds paid by an owner to a

---

1. Plaintiffs initially claimed a total of $328,979.65 made up of the following component parts: $47,049.54 (including post judgment interest of $8,773,05) remaining unpaid on a United States District Court judgment of $184,088.81 for unpaid contributions to the Funds for the August 1998 to March 1999 period, together with liquidated damages of $12,502.70, and pre-judgment interest of $1,767.36; and $281,930.11 for undelivered contributions to the Funds, liquidated damages, and interest for the December 1999 through March 2000 period. Plaintiff, at the argument on summary judgment, adjusted downward (by $37,232.09) the claim for which it seeks a non-dischargeability determination. The adjustment eliminated from the above calculation the portion of employee withholding relating to union dues ($20,874.25) together with liquidated damages ($3,131.14) and interest ($13,226.70) relating to the dues portion of unremitted withheld

employee compensation. Union dues are specifically excluded from the statutory trusts created by ERISA. Debtors took issue with none of these numbers, all of which were supported by an affidavit accompanying plaintiffs' summary judgment brief.

2. Compare *LoPresti v. Terwilliger*, 126 F.3d 34 (2nd Cir.1997); *Eavenson v. Ramey*, 243 B.R. 160 (N.D.Ga.1999); and *In re Philpott*, 281 B.R. 271 (Bkrtcy.W.D.Ark.2002) (finding unpaid withheld benefit plan contributions constitute a trust fund) with *In re Engleman*, 271 B.R. 366 (Bkrtcy.W.D.Mo.2001); *In re Bryant*, 73 B.R. 956 (Bkrtcy.N.D.Tex.1987); and *In re Nielsen*, 53 B.R. 289 (Bkrtcy.N.D.Ala.1985) (finding unpaid withheld benefit plan contributions merely give rise to a contract obligation and a debtor/creditor, non-fiduciary relationship.)

contractor for the goods or services of the contractor's suppliers or subcontractors. Next, the statute must create or identify a "fiduciary" duty, for example, a duty to pay such funds to suppliers or subcontractors who might otherwise lien the property of one who has already paid the contractor for the supplies or the subcontractor's work. Finally, under the statute, the trust must be in place when the defalcation occurs giving rise to the nondischargeable debt. This, as opposed to the defalcation itself, giving rise to the trust. See, *In re Kelley*, 215 B.R. 468 (10th Cir. BAP 1997).

■ Fiduciary duties arise under ERISA with respect to retirement or benefit plans to the extent one "... exercises any authority or control respecting management or disposition of [plan] assets...." 29 U.S.C. § 1002(21). It is undisputed in the instant case that the debtor/defendants controlled disposition of employee payroll deductions that were designated for pension and benefit plan contributions. These deductions were commingled by the Debtors with other funds of Gunter Steel and used to pay creditors in order to keep this business afloat. The critical question, however, for purposes of application of 11 U.S.C. § 523(a)(4), is whether these contributions were plan assets—that is to say, under ERISA, was there a *res* that was entrusted to Debtors as fiduciaries such that under *Young*, defalcation with respect to the *res*, would result in a nondischargeable debt.

In 1996, the U.S. Department of Labor adopted final rules defining when amounts withheld by an employer for contribution to an employee pension or welfare benefit plan became "plan assets" for ERISA purposes. Subsection (a) of 29 C.F.R. § 2510.3–102 states,

*Definition of "plan assets": participant contributions.* General rule.

.... the assets of a plan include.... *amounts* that a participant has *withheld from* his *wages* by an employer, for contribution to a plan *as of the earliest date* on which *such contributions can reasonably be segregated* from the employer's general assets. (emphasis added)

The balance of this regulation, prescribes the "maximum time periods" which may in "no event" be exceeded in determining, for different kinds of benefit plans, what is the "earliest date on which contributions can reasonably be segregated from the employer's general assets," *i.e.* the date "as of" which "amounts" of employee contributions became plan assets.

■ The summary judgment motion before the Court contains sworn statements that various withheld employee plan contributions were diverted to pay Gunter Steel creditors. This is not only uncontested, but admitted, by Debtors. The wage withholding in question was to have taken place in two periods, between August 1998 and March 1999, and between December 1999 and March 2000. The materials supporting plaintiffs' summary judgment motion fail to address what, with respect to the various funds, would have been the earliest reasonable date by which the subject contributions could have been segregated and paid over to plaintiff trustees. However, there is no genuine issue of fact but that the maximum time periods for that to have occurred, as prescribed by 26 C.F.R. § 2510.3–120, had long since past at the time this bankruptcy was filed on December 5, 2002.[3] Under ERISA, the

---

**3.** Under 29 C.F.R. § 2510.3–102 the longest "maximum time period" before which participant withheld contributions must be segregated by an employer under any circumstances is ninety (90) days from the date the amounts would otherwise have been payable to the

"amounts" that were withheld from participant-employee wages, whether characterized as cash or claims, became "plan assets," or a *res* with respect to which these Debtors had fiduciary responsibilities. The diversion of these amounts to payment of other legitimate business expenses constituted defalcation of that fiduciary responsibility for purposes of 11 U.S.C. § 523(a)(4).

Debtors have declined to put in issue the amounts plaintiffs' claim they are owed, which amounts plaintiffs duly support by affidavit as required by Rule 56. Thus, the Court concludes that this case presents no genuinely disputed issue of material fact on plaintiffs' summary judgment motion, and plaintiffs are entitled to judgment as a matter of law. Accordingly, it is

ORDERED that plaintiffs' motion for summary judgment is GRANTED; and it is

FURTHER ORDERED that judgment shall enter in favor of plaintiffs and against Debtors in the amount of $244,698.02; and it is

FURTHER ORDERED that said judgment together with the unpaid portion of the judgment of the United States District Court for the District of Colorado against Debtors and in favor of plaintiffs in Case No. 99–Z–207 in the amount of $47,049.54 is determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(4) as debts for defalcation while acting in a fiduciary capacity; and it is

FURTHER ORDERED that plaintiffs shall be awarded their costs herein.

employee, plus two extensions of ten (10) business days each.