James M. FAHEY, Jr., Debtor.

Charles Raso, as Trustee and Treasurer, Massachusetts Bricklayers and Masons Health and Welfare, Pension, and Annuity Funds, Plaintiff–Appellant,

v.

James M. Fahey, Jr., Defendant–Appellee.

BAP No. MB 12–028.
Bankruptcy No. 11–10505–WCH.
Adversary No. 11–01118–WCH.

United States Bankruptcy Appellate Panel of the First Circuit.

Nov. 20, 2012.

**682**

Melissa A. Brennan, Esq., and Catherine M. Campbell, Esq., on brief, Boston, MA, for Appellant.

Gary W. Cruickshank, Esq., on brief, Boston, MA, for Appellee.

Before LAMOUTTE, KORNREICH, and CABÁN, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

Charles Raso ("Raso") appeals from a bankruptcy court order granting summary judgment in favor of the debtor, James M. Fahey, Jr. ("Fahey"), on Count II of Raso's § 523(a)(4)[1] complaint seeking a determination that certain unpaid contributions to multiple employee benefit plans were nondischargeable. The bankruptcy court found that Raso failed to establish that Fahey acted in a fiduciary capacity, as required under § 523(a)(4). Because we conclude that Fahey acted in a fiduciary capacity as an ERISA[2] fiduciary, as well as a fiduciary of a technical trust under common law, we **REVERSE** the order and **REMAND** for proceedings consistent with this opinion.

### BACKGROUND

Fahey was formerly the president, treasurer, and sole shareholder of Zani Tile, Inc. ("Zani"), a business located in Watertown, Massachusetts. Raso was the president and secretary-treasurer of a labor organization known as Bricklayers and Allied Craftsmen Local Union No. 3 Massachusetts, Maine, New Hampshire, Rhode Island ("BAC Local 3"). He was also the trustee and treasurer of the Massachusetts Bricklayers and Masons Health and Welfare, Pension, and Annuity Funds (collectively, the "Funds"), which were multiemployer employee benefit plans. Each fund was a trust established pursuant to an Agreement and Declaration of Trust ("Trust Agreement") for the purpose of receiving contributions from participating employers in order to provide health and welfare, pension, and annuity benefits to eligible employees pursuant to collective bargaining agreements ("CBA's") between such employers and BAC Local 3. Each Trust Agreement provided, *inter alia*, that

> The term "assets" shall mean all property held or owned by the Fund without regard to its quality or character, including any assets under the control or direction of Investment Managers that may be employed by the Fund. In addition, *all contributions shall be considered and defined as plan assets including contributions that are properly due and owing but not yet paid* to the Fund by Contributing Employers.

(emphasis added).

In January 2011, Fahey filed a voluntary petition for chapter 7 relief. On Schedule F, he indicated that Raso, as Trustee of BAC Local 3, held an approximate

---

**1.** All references to the "Code" or the "Bankruptcy Code" are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. § 101, *et seq.* Unless otherwise indicated, all references to statutory sections are to sections of the Code. Unless expressly stated otherwise, all references to "Rule" or "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

**2.** Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

$200,000.00 disputed, unsecured claim.[3] This debt represented union dues and employee benefit contributions which Zani failed to pay to the Funds. In April 2011, Raso filed a two-count nondischargeability complaint on behalf of BAC Local 3 against Fahey. In Count I, Raso alleged that prior to the commencement of Fahey's bankruptcy case, Zani entered into one or more CBA's with BAC Local 3, whereby Zani agreed to deduct union dues from the net wages of its employees and to forward payment to the Funds, as the collection agent of BAC Local 3. According to Raso, from March 2009 to April 2010, Fahey personally failed to remit to BAC Local 3 the union dues which he collected. Accordingly, in Count I, Raso claimed that "Fahey's act of deducting union dues from the paychecks of Zani employees and failing to disburse such monies to the Funds or BAC Local 3, constituted a fraud or defalcation while acting in a fiduciary capacity within the meaning of [ ] § 523(a)(4)."

In Count II, Raso alleged that the CBA's also required Zani to make pension, health, and annuity contributions to the Funds on behalf of certain employees. According to Raso, Zani failed to make the required contributions to the Funds for the period of March 2009 to April 2010. Raso further alleged in Count II that as a "'fiduciary' within the meaning of ... ERISA, 29 U.S.C. § 1002(21)," Fahey "exercised discretionary control over plan assets," namely, the unpaid contributions. Accordingly, in Count II, Raso claimed that "Fahey's failure to pay plan assets, i.e. contributions that were due and owing [ ] to the Funds constituted a fraud or defalcation while acting in a fiduciary ca-

pacity within the meaning of 11 U.S.C. § 523(a)(4)." In his prayer for relief, Raso requested an order under § 523(a)(4), denying Fahey a "discharge as to any and all debts owed to" BAC Local 3.

Fahey filed an answer to the complaint, in which he: (1) denied that Raso held a claim against him, individually; (2) admitted that he exercised management control of Zani, but denied that he was a fiduciary of Zani or had any fiduciary duty to Raso; (3) denied that Raso had standing to raise any potential breach of fiduciary duty; and (4) denied that he breached his duty when he failed to remit the subject contributions.

Thereafter, on January 23, 2012, Raso filed a motion for summary judgment against Fahey on both counts of the complaint, arguing that the debt for unpaid contributions satisfied the elements required for nondischargeability under § 523(a)(4). He contended that: (1) the nonpayment of union dues and employee contributions constituted a defalcation under § 523; and (2) at the time of the defalcation, Fahey was a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21)(A). In his accompanying statement of undisputed facts, Raso added, *inter alia*, that: (1) Zani made payments through August 2010 on a mortgage encumbering Fahey's home, notwithstanding Fahey's declaration in his Statement of Financial Affairs that he received no income from Zani in 2010; and (2) Zani made weekly payments of $1,463.33 to Fahey from January 7, 2010 to April 26, 2010, as well as payments of $6,000.00 and $1,000.00 on June 21, 2010, and June 26, 2010, respectively, notwithstanding Fa-

---

**3.** Raso had previously obtained a judgment against Zani and Fahey in the United States District Court for the District of Massachusetts under ERISA, on behalf of the Funds for damages arising from unpaid and delinquent employee benefits contributions and union dues.

hey's testimony that he did not receive any money from Zani in 2010.

Attached to the affidavit Raso's counsel filed in support of summary judgment was the partial transcript of the November 2011 deposition of Fahey in which Fahey gave the following testimony regarding the evolution of his relationship to Zani: that from 1972 to 1995, he worked as a tile setter for Zani; that from 1995 until 2010, he was the president of Zani Tile; that he, his father, and another individual purchased Zani Tile; that in 2006, he became the sole shareholder of the business and acted in that capacity until August 2010, when Zani ceased operations. Fahey described himself as the "sole decision-maker of Zani," responsible for determining "who should be paid and how much." He admitted that it was his duty to ensure that the deductions for union dues were made, to decide whether to pay the federal taxes withheld from employees' wages, and to determine whether to pay the contributions which were due to the Funds. Additionally, according to Fahey's testimony, he oversaw the day-to-day operations of the business, including project management, purchasing, and bookkeeping. He further acknowledged that Zani made monthly payments through August 2010 to Citizens Bank on account of a $185,535.00 loan to Zani, which he guaranteed and secured with a mortgage on his properties located in Milton and East Dennis, Massachusetts.

Fahey filed a response to the summary judgment motion, in which he conceded that all unpaid deductions (amounting to $19,098.38) were nondischargeable and consented to the entry of summary judg-ment in Raso's favor on Count I. He opposed the entry of summary judgment on Count II, however, arguing that the failure to pay contributions (totaling $202,175.46) did not constitute fraud or defalcation while acting in a fiduciary capacity. Maintaining that "defalcation" is "a failure to produce funds entrusted ... to a fiduciary," Fahey claimed that Raso failed to demonstrate that funds were entrusted to him. Moreover, Fahey claimed: 1) the failure to pay contributions was a breach of contract by Zani, for which he was not personally liable; and 2) such breaches are dischargeable in bankruptcy. Challenging the cases cited by Raso as inapposite and relying heavily on *Rutanen v. Baylis (In re Baylis)*, 313 F.3d 9, 18–19 (1st Cir. 2002), Fahey suggested that the level of fault required for defalcation was not present in this case. In his accompanying statement of disputed facts, Fahey contended that any funds he received in 2010 from Zani were for loan repayments which he believed did not constitute income requiring disclosure in his Statement of Financial Affairs.

On May 14, 2012,[4] the bankruptcy court entered an Amended Order ("the Order"), granting Raso's motion for summary judgment on Count I. With respect to Count II, the court denied Raso's request for summary judgment and entered summary judgment in favor of Fahey. Because Fahey consented to the entry of summary judgment on Count I, the court primarily addressed Count II in its accompanying Memorandum of Decision.[5] *See Raso v. Fahey (In re Fahey)*, 470 B.R. 649 (Bankr. D.Mass.2012).

---

4. Although the bankruptcy court held a hearing on the motion for summary judgment, a transcript of the hearing was not included in the record. The docketed Proceeding Memorandum indicates that the court held a hearing and took the matter under advisement.

5. The Memorandum of Decision, docket entry no. 35, replaced the prior memorandum of decision, docket entry no. 32, also entered on May 14, 2012, and subsequently withdrawn.

At the outset, the bankruptcy court observed that the § 523(a)(4) exception requires a creditor to show that: (1) "an express or technical trust existed ...."; (2) "the debtor acted in a fiduciary capacity with respect to the trust;" and (3) "the debt arises from a defalcation, as the term is used in" § 523(a)(4). *In re Fahey*, 470 B.R. at 655. The court further acknowledged that a statutory trust may constitute a technical trust, and that ERISA may form the basis of a statutory trust if the following elements are satisfied: (1) "money was entrusted to a trustee;" (2) "ERISA creates or identifies fiduciary duties;" and (3) "the trust was in place when the defalcation giving rise to the debt occurred." *Id.* at 655–56 (citations and internal quotations omitted). The court found the presence of a statutory trust in this case. It reasoned that the contributions and deductions constituted plan assets entrusted by the Funds to the trustees, thereby satisfying the first element of a technical trust. *Id.* The court also found that "the trust was in place when the alleged defalcation occurred," thus satisfying the third element. *Id.* It concluded, however, that the second element necessary for a statutory trust—namely, a fiduciary relationship—was absent here. In reaching this conclusion, the court relied on ERISA's definition of a "fiduciary":

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets....

*Id.* at 656–57 (quoting 29 U.S.C. § 1002(21)(A)(i)) (alteration in original). While the court stated that there was "no question that [Fahey] had physical control over Zani's assets, and by extension, the unpaid [c]ontributions," it concluded "that

control was not discretionary in nature," as required by the foregoing ERISA definition. *Id.* at 657. The court reasoned:

The Debtor had a contractual obligation pursuant to the CBA to pay Contributions to the Funds, and it is the Plaintiff, not the Debtor, who has discretionary control over the "contractual right to collect unpaid contributions. Whether to enforce [its] contractual rights is entirely up to the [Plaintiff]; the [Debtor], meanwhile, [has] no say over whether this right will be enforced or not."

*Id.* (quoting *Navarre v. Luna (In re Luna)*, 406 F.3d 1192, 1202 (10th Cir. 2005)) (alterations in original).

The court adopted the reasoning of *Luna, supra,* and rejected as "incorrectly decided" the cases relied upon by Raso, namely, *NYSA–ILA Med. & Clinical Servs. Fund v. Catucci,* 60 F.Supp.2d 194 (S.D.N.Y.1999), and *Trs. of Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contractors, Inc.,* 478 F.Supp.2d 279 (D.Conn.2007). Accordingly, the court concluded that Fahey lacked the necessary discretion required for fiduciary status under ERISA, because "[t]he option to breach a contract does not constitute discretion in the performance of one's duty." *In re Fahey,* 470 B.R. at 658. Having determined that Fahey was not an ERISA fiduciary, the court added that there was "no other basis" for a finding of fiduciary capacity under § 523(a)(4). *Id.* Thus, it denied Raso's request for summary judgment with respect to Count II, and entered summary judgment in favor of Fahey. *Id.* This appeal ensued.

On appeal, Raso argues that the bankruptcy court erred when it determined that Fahey was not an ERISA fiduciary. He maintains that contrary to the bankruptcy court's opinion, "a person need only have *actual* control over the disposition of

plan assets to be considered a fiduciary." Citing 29 U.S.C. § 1002(21)(A)(i), Raso contends that the discretionary aspect of the requisite authority or control according to the statute relates only "to the management of the plan itself," and is not necessary for a finding of fiduciary status when the disposition of plan assets is in issue. Emphasizing Fahey's own testimony regarding the extent of his control over Zani, Raso argues that Fahey "exercised the requisite authority and control to properly be considered a fiduciary of the plan assets." He further argues that the failure to remit the subject contributions constituted a defalcation under the standards set forth in *Baylis, supra.* He asks the Panel to reverse the Order with respect to Count II and to enter summary judgment in his favor in the amount of "$314,096.01 (including the $19,098.38 in union dues that the [b]ankruptcy [c]ourt found was nondischargeable)."

Conversely, Fahey argues that the bankruptcy court correctly found that he was not a fiduciary because he did not, and could not, exercise any control regarding the collection of unpaid contributions. He also contends that Raso failed to establish the element of defalcation, which requires a showing that funds were entrusted to Fahey. Accordingly, Fahey asks the Panel to affirm the Order with respect to Count II.

### JURISDICTION

 We are " 'duty-bound' " to determine whether we have jurisdiction before proceeding to the merits, even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (quoting *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP

1998)). We may hear appeals from final judgments, orders, and decrees pursuant to 28 U.S.C. §§ 158(a)(1) and (c)(1) or, with leave of the court, from interlocutory orders and decrees pursuant to 28 U.S.C. §§ 158(a)(3) and (c)(1). *See In re Bank of New England Corp.*, 218 B.R. at 645. An order granting summary judgment is a final order for purposes of appeal "where no counts against any defendants remain." *Correia v. Deutsche Bank Nat'l Trust Co. (In re Correia)*, 452 B.R. 319, 322 (1st Cir. BAP 2011). Because no counts remain, the Order is final, and we have jurisdiction to consider this appeal.

### STANDARD OF REVIEW

 A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo.* *See Lessard v. Wilton–Lyndeborough Coop. School Dist.*, 592 F.3d 267, 269 (1st Cir.2010). "A summary judgment decision is subject to *de novo* review." *Petrucelli v. D'Abrosca (In re D'Abrosca)*, BAP No. 10–062, 2011 WL 4592338, at *4 (1st Cir. BAP Aug. 10, 2011) (citations omitted). Similarly, "[w]hen considering whether a creditor has established the elements of § 523(a)(4)," courts apply a *de novo* standard of review. *Ingram v. Womack (In re Womack)*, 122 Fed.Appx. 400, 401 (10th Cir.2005) (citation omitted).

### DISCUSSION

**I. The Summary Judgment Standard**

"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 762 (1st Cir.1994); *see also Soto–Rios v. Banco Popular de Puerto Rico*, 662 F.3d 112, 115 (1st Cir.2011). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." *In re Varrasso*, 37 F.3d at 762 (citations omitted); *see*

*also Soto–Rios v. Banco Popular de Puerto Rico,* 662 F.3d at 115; Fed. R. Bankr.P. 7056; Fed.R.Civ.P. 56.[6] "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varrasso,* 37 F.3d at 763 (citing Fed.R.Civ.P. 56(c)). "As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver an absence of evidence to support the nonmoving party's case." *Id.* at 763, n. 1 (citation and internal quotations omitted). "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material." *Id.* (citations and internal quotations omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

There are no relevant and material facts in dispute on appeal before the Panel. The issue on appeal is whether the bankruptcy court erred, as a matter of law, in concluding that Fahey was not an ERISA fiduciary and that there was no other basis for a finding of fiduciary capacity under § 523(a)(4). The Panel reviews the bankruptcy court's decision *de novo.*

## II. Nondischargeability Under § 523(a)(4)

 Section 523(a)(4) provides that a discharge in a bankruptcy proceeding

"does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity...." 11 U.S.C. § 523(a)(4). "This bar to discharge reaches debts incurred through abuses of fiduciary positions ... [and] involv[ing] debts arising from the debtor's acquisition or use of property that is not the debtor's." *FNFS, Ltd. v. Harwood (In re Harwood),* 637 F.3d 615, 619 (5th Cir.2011) (citations and internal quotations omitted) (alterations in the original). As the bankruptcy court correctly observed, a creditor must establish three elements to invoke the § 523(a)(4) exception to dischargeability. "First, the debt must result from a fiduciary's defalcation under an 'express or technical trust' ... Second, the debtor must have acted in a fiduciary capacity with respect to the trust.... Third, the transaction in question must be a 'defalcation' within the meaning of bankruptcy law." *Chao v. Duncan (In re Duncan),* 331 B.R. 70, 77 (Bankr.E.D.N.Y.2005) (citations omitted). The elements must be established by a preponderance of the evidence. *Id.* (citing *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). The exception is strictly construed in favor of the debtor in order to comply with the "fresh start" policy underlying the Bankruptcy Code. *Grogan v. Garner,* 498 U.S. at 286, 111 S.Ct. 654.

## A. Standards for Express or Technical Trust

 "The usual elements of an express trust have traditionally included an explicit declaration of trust, a clearly defined trust *res,* and an intent to create a trust relationship." *Gehlhausen v. Olinger*

---

**6.** Fed.R.Civ.P. 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed.R.Civ.P. 56(a).

*(In re Olinger),* 160 B.R. 1004, 1014 (Bankr.S.D.Ind.1993) (internal quotations and citations omitted); *see also LaPointe v. Brown (In re Brown),* 131 B.R. 900, 905 (Bankr.D.Me.1991). A technical trust, on the other hand, "arises under statute or common law." *In re D'Abrosca,* 2011 WL 4592338, at *5 (citing *Farley v. Romano (In re Romano),* 353 B.R. 738 (Bankr. D.Mass.2006); *M–R Sullivan Mfg. Co. v. Sullivan (In re Sullivan),* 217 B.R. 670, 674 (Bankr.D.Mass.1998); *Collenge v. Runge (In re Runge),* 226 B.R. 298, 305 (Bankr.D.N.H.1998)). Where the basis for the existence of a technical trust is statutory, the statute must "(1) define[ ] the trust res, (2) spell[ ] out the trustee's fiduciary duties, and (3) impose[ ] a trust prior to and without reference to the wrong that created the debt." *Stowe v. Bologna (In re Bologna),* 206 B.R. 628, 632 (Bankr. D.Mass.1997) (citations omitted). "In analyzing common law technical trusts, courts typically examine state law to determine if it imposes fiduciary obligations on the relevant party." *In re Sullivan,* 217 B.R. at 675 (citations omitted).

### B. Standards Governing the Fiduciary Relationship Element

 The fiduciary relationship necessary for a denial of discharge under § 523(a)(4) is determined by federal law. *In re D'Abrosca,* 2011 WL 4592338, at *5 (citations omitted). "The content of federal law is informed by principles articulated in state law, including those that define essential attributes of a trust relationship." *In re Brown,* 131 B.R. at 904 (citations omitted). "As with the exceptions to discharge in general, the concept of fiduciary capacity in [ ] § 523(a)(4) is construed nar-

rowly." *In re D'Abrosca,* 2011 WL 4592338, at *5 (citations and footnote omitted). " '[T]he broad definition of fiduciary under nonbankruptcy law—a relationship involving trust, confidence, and good faith—is inapplicable in the dischargeability context.' " *Id.* (quoting *Honkanen v. Hopper (In re Honkanen),* 446 B.R. 373, 378–79 (9th Cir. BAP 2011)) (citing *Cal–Micro, Inc. v. Cantrell (In re Cantrell),* 329 F.3d 1119, 1125 (9th Cir.2003)). The term "fiduciary" does not apply to "trusts that are imposed by law as a remedy." *In re Sullivan,* 217 B.R. at 675 (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). Consequently, "implied or constructive trusts, and trusts ex maleficio do not establish fiduciary relationships under the Code." *Id.* (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. at 333, 55 S.Ct. 151; *Brixius v. Christian (In re Christian),* 172 B.R. 490, 495 (Bankr.D.Mass.1994)).

### C. Standards Governing the Defalcation Element

 In *Baylis, supra,* the First Circuit instructed that "[i]n evaluating whether there is a defalcation of a fiduciary duty, there must be reference to the duty involved." 313 F.3d at 20. The First Circuit declared, however, that "not every breach of a fiduciary duty amounts to defalcation." *Id.* at 18. "Defalcation requires some degree of fault, closer to fraud, without the necessity of meeting a strict specific intent requirement." [7] *Id.* at 18–19. The court elaborated that a creditor must "be able to show that a debtor's actions were so egregious that they come close to the level that would be required to

---

7. Other circuits have held that even an innocent mistake can constitute a defalcation. *See, e.g., Republic of Rwanda v. Uwimana (In re Uwimana),* 274 F.3d 806, 811 (4th Cir. 2001) (negligence or innocent mistake result-ing in misappropriation or failure to account is sufficient for defalcation under § 523(a)(4)); *see also In re Sullivan,* 238 B.R. at 237–38 (recklessness required).

prove fraud, embezzlement, or larceny." *Id.* at 20.

### III. The Standards Applied

Our analysis is necessarily three-fold. We must determine whether the record supports a conclusion that there was an express or technical trust; that Fahey acted in a fiduciary capacity with respect to the trust; and that the transaction or transactions in question constituted a "defalcation" within the meaning of bankruptcy law. *In re Duncan,* 331 B.R. at 78; *see also Bd. of Trs., Adirondack Carpenters Pension Fund v. Parker (In re Parker),* 388 B.R. 11, 18 (Bankr.N.D.N.Y.2008).

### A. Express or Technical Trust

■ Raso contends that Fahey was a fiduciary by virtue of a technical trust created by ERISA.[8] Raso's assertion of a technical trust is well-founded. As previously stated, "[a] technical trust exists where the statute (1) defines the trust res, (2) spells out the trustee's fiduciary duties, and (3) imposes a trust prior to and without reference to the wrong that created the debt." *In re Bologna,* 206 B.R. at 632 (citations omitted). Numerous courts have held that "ERISA-covered employee benefit plans ... satisfy the elements of a technical trust." *In re Parker,* 388 B.R. at 18 (citing *In re Duncan,* 331 B.R. at 78); *see also Eavenson v. Ramey,* 243 B.R. 160, 166 (N.D.Ga.1999) ("ERISA statutorily satisfies the elements of a technical trust under § 523(a)(4)"); *Trs. of the Iron Workers Dist. Council of New England Pension, Health and Welfare, Annuity, Vacation, and Educ. Funds v. Mayo (In re Mayo),* No. 04–1067, 2007 WL 2713064, at *8 (Bankr.D.Vt. Sept. 17, 2007); *Trs. of the Colo. Ironworkers Pension Fund v. Gunter (In re Gunter),* 304 B.R. 458, 461 (Bankr.D.Colo.2003); *Cochran v. Coleman*

*(In re Coleman),* 231 B.R. 393, 395 (Bankr. S.D.Ga.1999). In its Memorandum of Decision, the bankruptcy court concluded that the Funds satisfied the three elements required to establish the existence of a technical trust, reasoning:

> ERISA § 403(a) requires that "all assets of an employee benefit plan shall be held in trust by one or more trustees," and the parties have stipulated that the Funds qualify as employee benefit plans under ERISA. The Funds entrusted plan assets, in the form of Contributions and Deductions, to trustees of the Funds, and therefore the first element of a statutory trust has been met. Further, ERISA delineates who qualifies as a fiduciary and assigns those fiduciaries various duties. For example, ERISA requires fiduciaries to:
>
>> provide for continuation coverage, provide a detailed plan description to all employee-beneficiaries, notify each employee-beneficiary of any material changes, and act with the care, skill, prudence, and diligence of a prudent man acting in a like capacity ... [T]hese duties attach to the fiduciary at the creation of an ERISA plan. Thus, the requirement that a 'technical trust' arise prior to and without regard to the breach ... is satisfied.
>
> Here, the ERISA plan, in the form of the Funds, predated the Debtor's failure to pay Contributions. Accordingly, the trust was in place when the alleged defalcation occurred. The second and third elements of a statutory trust are therefore satisfied, and the Funds constitute technical trusts.

*In re Fahey,* 470 B.R. at 656 (alterations in original) (citations omitted).

Based on the foregoing analysis, we conclude that the bankruptcy court correctly

---

**8.** Raso does not assert, and the record does not support, the existence of an express trust.

found the existence of the required element of a technical trust, and that the first element required for a nondischargeability claim under § 523(a)(4) is, therefore, satisfied.

## B. Acting in a Fiduciary Capacity With Respect to the Funds

■■■■■ The meaning of fiduciary, as stated *supra,* is a matter of federal law. The definition of fiduciary set forth in ERISA, 29 U.S.C. § 1002(21)(A), is premised "not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (citing 29 U.S.C. § 1002(21)(A)). Courts have stated that the term fiduciary under ERISA is to be construed broadly. *See, e.g., United States v. Glick,* 142 F.3d 520, 527 (2d Cir. 1998). "[T]he definition includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title." *Blatt v. Marshall and Lassman,* 812 F.2d 810, 812 (2d Cir.1987) (citation omitted) (alteration in original) (finding defendants were ERISA fiduciaries under a functional definition because they exercised actual control over plan assets).

■■■ Raso argues only that Fahey was a fiduciary within the meaning of ERISA, 29 U.S.C. § 1002(21)(A)(i).[9] Our analysis, therefore, focuses on whether Fahey exercised "any authority or control respecting management or disposition of [the Funds'] assets," or, alternatively, whether he exercised "any discretionary authority or discretionary control respecting manage-

ment" of the Funds. 29 U.S.C. § 1002(21)(A)(i).[10]

### 1. Any Authority or Control Regarding Management or Disposition of Plan Assets

#### (a) Plan Assets

■■■ In order to determine if Fahey had any control or authority over plan assets we must find, as a threshold matter, that the employer contributions are considered as such. *In re Parker,* 388 B.R. at 19. "Traditionally, the 'proper rule, developed by caselaw [sic], is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise.'" *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci),* 493 F.3d 635, 642 (6th Cir.2007) (quoting *ITPE Pension Fund v. Hall,* 334 F.3d 1011, 1013 (11th Cir.2003)); *see also Nettleton,* 478 F.Supp.2d at 283 (citing *Trs. of S. Cal. Pipe Trades Health and Welfare Trust Fund v. Temecula Mech., Inc.,* 438 F.Supp.2d 1156, 1163 (C.D.Cal.2006)) ("general rule [is] that contributions do not become plan assets until paid to the plan" unless plan documents identify unpaid employer contributions as such); *United States v. Panepinto,* 818 F.Supp. 48, 50–51 (E.D.N.Y.1993) (holding that under wage agreements, employer had no legal interest in unpaid employer contributions to ERISA fund and, thus, those unpaid contributions were "plan assets"), *aff'd,* 28 F.3d 103 (2d Cir.1994). Thus, in *Nettleton,* the district court found that the plan assets were the unpaid contributions themselves, not the contractual

---

9. Sections 1002(21)(A)(ii) and (iii) are not in issue.

10. Although Raso alleged generally in his complaint that Fahey was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), he specified only that Fahey "exercised discre-

tionary control over plan assets." In the motion for summary judgment and on appeal, however, Raso developed the argument that Fahey also exercised actual authority regarding disposition of plan assets.

right to collect unpaid contributions. *Nettleton,* 478 F.Supp.2d at 282. Accordingly, that court ruled that the principal breached his fiduciary duty by failing to make plan contributions. *Id.* In reaching this conclusion, the district court looked to the trust agreement establishing the subject fund, which clearly defined the plan assets as " 'such sums of money as have been *or shall be paid* to the Pension Fund by the Employers.' " *Id.* at 283 (emphasis in original).

In contrast, in *Luna,* the Tenth Circuit found that the relevant trust documents and collective bargaining agreement were "at best ambiguous regarding the point when unpaid contributions became plan assets." 406 F.3d at 1201. Thus:

> Without any guidance from the CBA and other trust documents, the court turned to the common law of property to decide whether the unpaid contributions at issue were plan assets. The court ultimately defined the plan assets as the Trustees' contractual right to collect unpaid contributions, rather than the unpaid contributions themselves. Because the contractual right to collect unpaid contributions belonged solely to the Trustees, the employers "exercised no control over how the Trustees manage or dispose of that asset." The court's simple conclusion from this was that, with no control over the Trustees' contractual right, the employers could not be considered a fiduciary of the plan's assets.

*Nettleton,* 478 F.Supp.2d at 282 (quoting *Luna,* 406 F.3d at 1204) (internal citations omitted).

In the instant case, a review of the relevant Trust Agreements reveals no ambiguity in the *Luna* sense. Instead, the language defining the trust assets is comparable to the unambiguous definitional language of the trust agreement in *Nettle-*

ton. Each Trust Agreement specifically provides in Section 1.15:

> The term assets shall mean all property held or owned by the Fund without regard to its quality or character, including any assets under the control or direction of Investment Managers that may be employed by the Fund. In addition, *all contributions shall be considered and defined as plan assets including contributions that are properly due and owing but not yet paid* to the Fund by Contributing Employers.

(emphasis added).

In light of the foregoing, we conclude that the bankruptcy court correctly determined that "the delinquent [c]ontributions were assets of the Funds, despite the fact that they remained in Zani's possession, and the first prong of ERISA's definition of fiduciary is satisfied." *In re Fahey,* 470 B.R. at 657.

### (b) Authority or Control

 The bankruptcy court's fiduciary capacity analysis turns on its application of ERISA's requirement of a certain type of control with respect to the plan assets pursuant to 29 U.S.C. § 1002(21)(A)(i). Specifically, the court stated: "The second prong of ERISA's definition of fiduciary requires a showing that [Fahey] exercised 'discretionary authority or discretionary control respecting management ... or disposition of [the plan's] assets.' " *In re Fahey,* 470 B.R. at 657 (citing 29 U.S.C. § 1002(21)(A)) (ellipsis and alteration in the original). The ellipsis in the ERISA provision as recited by the court, however, omits significant language from the statute which permits, in the alternative, a showing of "*any* authority or control respecting management or disposition of [the plan's] assets." 29

U.S.C. § 1002(21)(A)(i) (emphasis added).[11] The statute specifically provides, in relevant part, that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). The requirements under 29 U.S.C. § 1002(21)(A)(i) are divisible. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.1992). Fiduciary status under 29 U.S.C. § 1002(21)(A) is "not an all or nothing concept." *Briscoe v. Preferred Health Plan, Inc.*, 578 F.3d 481, 485 (6th Cir.2009) (citation omitted). The condition that the authority or control be "discretionary" therefore does not apply to the "management or disposition of [the plan's] assets." *See* 29 U.S.C. § 1002(21)(A)(i).

 As the Second Circuit has stated, this provision of ERISA requires a showing of *"actual* control over the disposition of plan assets." *Blatt v. Marshall and Lassman*, 812 F.2d at 813 (holding that accounting firm principals breached fiduciary duty by interfering with receipt of benefits to which participant was entitled) (emphasis in original). Indeed, the bankruptcy court below conceded that "[t]here [was] no question that [Fahey] had physical control over Zani's assets, and by extension, the unpaid [c]ontributions." *In re Fahey*, 470 B.R. at 657. The court ruled, however, "that control was not discretionary in nature." *Id.* It reasoned that Fahey merely had a

> contractual obligation pursuant to the CBA to pay Contributions to the Funds, and it [was Raso], not [Fahey] who [had] discretionary control over the "contrac-

tual right to collect unpaid contributions." ... Although [Fahey] certainly had the option to breach [his] contract, and in fact did, "an employer cannot become an ERISA fiduciary merely because it breaches its contractual obligations to a fund."

*Id.* at 657–58 (quoting *Luna*, 406 F.3d at 1202–1203).

We disagree with the bankruptcy court's conclusion for two reasons. First, its reliance on *Luna* is misplaced because, in that case, the court's finding that fiduciary capacity was absent was premised on the assumption that the plan asset was the right to collect unpaid contributions, not the unpaid contribution itself. In the case before us, however, the bankruptcy court acknowledged that the unpaid contributions were assets of the Funds. Thus, its focus properly should have been whether Fahey exercised the requisite control over the unpaid contributions rather than the right to collect those contributions. Secondly, a review of the record reveals that Fahey's responsibility and control were much wider than the bankruptcy court's decision implies. To suggest that Fahey merely had a contractual obligation to pay—or not to pay—plan contributions marginalizes Fahey's role and responsibility in relation to the Funds and their assets. This view appears to overlook that Fahey, as the president and sole owner of a corporation whose debt to an ERISA plan was a plan asset, had assumed unfettered authority in all matters directly and indirectly related to Zani's payment of contributions to the Funds. This authority, by his own admission, included responsibility for running Zani's day-to-day operations, and extended to all of Zani's decisions, including

---

11. Although Raso notes this issue in his brief, he, too, misstated the applicable ERISA provision in his complaint.

whether to pay contributions to the Funds or to pay corporate obligations which he personally guaranteed.

Under similar circumstances, courts have found a level of actual control relating to management or disposition of plan assets which was sufficient to qualify for ERISA fiduciary status. *See, e.g., LoPresti v. Terwilliger,* 126 F.3d 34, 40 (2d Cir. 1997) (finding company's president was ERISA fiduciary because he had role in determining which bills to pay, which creditors were to be paid out of the company's general account, and when those creditors would be paid); *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.,* 352 F.Supp.2d 794, 806 (E.D.Mich.2004) (holding that, given defendant's admission that he was responsible for day-to-day operation of defunct company, including decision whether or not to pay ERISA contributions, no reasonable jury could find that he did not act in fiduciary capacity); *Catucci,* 60 F.Supp.2d at 202 (finding that defendant, who was sole shareholder, ran corporation, and made all decisions on payments, including, "most significantly," payments to employee benefit plan, exercised requisite control over plan assets); *Connors v. Paybra Mining Co.,* 807 F.Supp. 1242, 1246 (S.D.W.Va.1992) (holding company officers and directors exercised authority or control respecting management or disposition of plan assets, and thus were ERISA fiduciaries, where they made "personal, conscious choices" to use withheld employee contributions to cover company expenses); *Pension Benefit Guar. Corp. v. Solmsen,* 671 F.Supp. 938, 946 (E.D.N.Y.1987) (finding fiduciary duty where defendant had power to authorize and make payments to employee benefit plan).

The foregoing decisions are persuasive, insofar as they are consistent with the Supreme Court's recognition that ERISA defines "fiduciary" "in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.,* 508 U.S. at 262, 113 S.Ct. 2063. Fahey's dominant, pervasive role in Zani establishes, at a minimum, that he exercised *actual* "authority or control respecting management or disposition" of the Funds' assets, sufficient to qualify as a fiduciary under 29 U.S.C. § 1002(21)(A)(i). Furthermore, Fahey's exercise of broad discretion over Zani's assets and spending practices, and personal, conscious choice to withhold contributions to the Funds, also rises to the level of "discretionary authority or discretionary control respecting management of [the] plan." *See Nettleton,* 478 F.Supp.2d at 283–84 (principal's discretionary control evidenced by his admission that his authority to dictate which bills would be paid included satisfying employer's obligations to employee benefit plan). In short, these actions, performed by the president and one hundred-percent shareholder of the administrator of an ERISA plan have the "'functional' markings of fiduciary responsibility." *In re Duncan,* 331 B.R. at 85 (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. at 262, 113 S.Ct. 2063).

The conclusion that Fahey was an ERISA fiduciary is consistent with the "core purpose of ERISA, which is to create a system whereby accountable fiduciaries are motivated by their accountability to protect the interests of participants in ERISA plans." *Herman v. NationsBank Trust Co.,* 126 F.3d 1354, 1366 (11th Cir. 1997). We are mindful that fiduciary breaches "may seem difficult to avoid when the corporation is in debt to employee benefit plans because any bills the corporation pays may be deemed uses of Fund assets." This difficulty was aptly addressed by one court as follows:

That is what the corporation and its controlling persons bargained for ...

when they agreed that unpaid contributions be deemed Fund assets. A ruling otherwise would improperly rewrite a collective bargaining agreement in a way that deprives one party, the Fund, of a useful debt collection procedure that the other party—the employer and its privies, agents, and controlling persons— freely agreed upon in a bargaining process that balanced both sides' benefits and detriments.

*Catucci,* 60 F.Supp.2d at 203.

The Panel concludes that Fahey is a fiduciary in relation to the Funds within the meaning of 29 U.S.C. § 1002(21)(A)(i), responsible and accountable for the Funds' assets.

### 2. Does ERISA Fiduciary Status Satisfy § 523(a)(4)'s Fiduciary Capacity Requirement?

 The First Circuit has not addressed whether ERISA fiduciary status will satisfy § 523(a)(4)'s fiduciary capacity requirement. Appellate courts are "split on the question of whether acting in a fiduciary capacity under ERISA is coextensive with acting in a fiduciary capacity under § 523(a)(4)." *In re Mayo,* 2007 WL 2713064, at *9. The Ninth Circuit has held that ERISA plan fiduciaries are *always* fiduciaries for purposes of § 523(a)(4) "because ERISA satisfies the traditional requirements for a statutory fiduciary to qualify as a fiduciary under § 523(a)(4)," namely the requirements that the statute "(1) defines the trust res; (2) identifies the fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the alleged wrongdoing." *Blyler v. Hemmeter (In re Hemmeter),* 242 F.3d 1186, 1190 (9th Cir.2001). The court in *Hemmeter* reasoned:

The trust res is identified by the creation of the plan itself. 29 U.S.C. § 1102. ERISA also defines the fiduciary's fund management duties. *See, e.g.,*

29 U.S.C. §§ 1103–1104. These duties necessarily arise upon creation of an ERISA plan and predate the creation of any debt to the plan participant creditor.... ERISA imposes obligations on the fiduciary prior to the alleged wrongdoing. Thus, ERISA satisfies the traditional requirements for a statutory fiduciary to qualify as a fiduciary under § 523(a)(4). *Morgan v. Musgrove (In re Musgrove),* 187 B.R. 808, 814 (Bankr. N.D.Ga.1995).

*Id.*

On the other hand, the Sixth and Eighth Circuits have held that being an ERISA fiduciary is not sufficient, in and of itself, to satisfy the fiduciary capacity element of § 523(a)(4). *See, e.g., Hunter v. Philpott,* 373 F.3d 873, 875 (8th Cir.2004) (holding that Supreme Court and prior Eighth Circuit holdings require examination of the property alleged to be defalcated in order to determine whether defendant was obligated to hold that property for the benefit of the funds); *In re Bucci,* 493 F.3d at 641 (citing Sixth Circuit cases construing "fiduciary capacity" in § 523(a)(4) more narrowly than under ERISA, and agreeing with *Hunter, supra* ).

Numerous bankruptcy courts side with the Ninth Circuit and find it "reasonable and appropriate to look to ERISA's definition of a fiduciary in order to assess whether the requirement of fiduciary capacity has been met" under § 523(a)(4). *In re Duncan,* 331 B.R. at 82 (holding that "where the debt arises from an ERISA fiduciary acting in his or her fiduciary capacity under the statute, then [§ ] 523(a)(4)'s requirement that the debtor acted in a fiduciary capacity will be met."); *accord In re Mayo,* 2007 WL 2713064, at *9; *Shephard v. O'Quinn (In re O'Quinn),* 374 B.R. 171, 179–80 (Bankr.M.D.N.C. 2007); *General Produce Inc. v. Tucker (In re Tucker),* No. 06–5107, 2007 WL

1100482, at \*4 (Bankr.M.D.Ga. Apr. 10, 2007); *Weaver v. Weston (In re Weston)*, 307 B.R. 340, 343 (Bankr.D.N.H.2004); *Eavenson v. Ramey*, 243 B.R. at 165–66; *Harsch v. Eisenberg (In re Eisenberg)*, 189 B.R. 725, 730 (Bankr.E.D.Wis.1995); *In re Musgrove*, 187 B.R. at 814.[12]

The reasoning of the Ninth Circuit in *Hemmeter, supra*, and the numerous bankruptcy court decisions similarly concluding that an ERISA fiduciary will satisfy the "fiduciary capacity" requirement of § 523(a)(4), appears sound. Indeed, as one bankruptcy court noted, "it is routine to give meaning to Bankruptcy Code terms by reference to non-bankruptcy law." *In re Duncan*, 331 B.R. at 82 (noting, by way of example, that bankruptcy courts look to non-bankruptcy law to determine property rights in the assets of a debtor's estate). Thus, we conclude that where the debt arises from an ERISA fiduciary acting in his fiduciary capacity under that statute, then § 523(a)(4)'s "fiduciary capacity" requirement will be met. It follows from this conclusion that Fahey acted in a "fiduciary capacity" with respect to the Funds by virtue of his status as an ERISA fiduciary.

■ Moreover, even if an ERISA fiduciary does not *per se* satisfy the § 523(a)(4) requirement for "fiduciary capacity," an analysis of Fahey's control and authority over the plan in *functional* terms nonetheless yields the conclusion that he acted as a fiduciary of a technical trust imposed by common law. *See In re Mayo*, 2007 WL 2713064, at \*9 (engaging in analysis of principal's control and authority over plan in "functional terms" to support conclusion that he acted in fiduciary capacity for pur-

poses § 523(a)(4)). This is so, notwithstanding the bankruptcy court's summary conclusion that outside of ERISA, no other basis existed for finding a fiduciary status under § 523(a)(4). This statement overlooks that in addition to statutes, common law also can give rise to a technical trust. *See In re D'Abrosca*, 2011 WL 4592338, at \*5. As the Panel previously noted in *D'Abrosca, supra*, "one must look further to ascertain whether the relationship was imbued with attributes giving rise to, in substance, a trust." 2011 WL 4592338, at \*5 (citing *In re Brown*, 131 B.R. at 905). "[T]he central focus of the inquiry under § 523(a)(4) [is] whether the alleged fiduciary exercises actual control over the alleged beneficiary's money or property." *May v. Lyon (In re Lyon)*, 348 B.R. 9, 25 n. 34 (Bankr.D.Conn.2006) (citing *In re Marchiando*, 13 F.3d 1111 (7th Cir.1994)). "It is clear that the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility." *Id.* (citing *LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779 (5th Cir.1993)); *see also In re Harwood*, 637 F.3d at 624 (chief operating officer of corporate general partner exercised complete control over partnership's management, compelling conclusion that he stood in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of a trust and thus acted in a fiduciary capacity for § 523(a)(4) purposes).

■ Certain inescapable conclusions follow from an examination of the critical issue of Fahey's control. Because Fahey assumed unfettered control over the unpaid contributions (which constitute plan

---

**12.** *But see Int'l Bhd. of Electrical Workers, Local Union No. 602 v. Bryant (In re Bryant)*, 73 B.R. 956, 958–59 (Bankr.N.D.Tex.1987) (holding that ERISA fiduciary status "does not raise the employer's status to a fiduciary

for bankruptcy discharge purposes"); *Schrimsher v. Nielsen (In re Nielsen)*, 53 B.R. 289 (Bankr.N.D.Ala.1985) (stating that ERISA does not supply fiduciary relationship under § 523(a)(4)).

assets), served as Zani's sole shareholder, officer, accounting supervisor, and decision-maker, and functioned as the only entity with control of deciding whether and when to pay Zani's contributions to the Funds, the record supports a determination that his relationship to the Funds was functionally that of a fiduciary. *See In re Brown*, 131 B.R. at 905 (given principal's unfettered control of and access to corporation's assets, his relationship to corporation "was in substance no different than that of a trustee to its trust, a guardian to its ward"). The very fact that Fahey assumed control over the business of Zani effectively saddled him with fiduciary obligations to the Funds. Thus, based on Fahey's complete domination over Zani's finances, including payments to the Funds, the Panel concludes that, independent of his status as an ERISA statutory fiduciary, Fahey acted in a fiduciary capacity with respect to the Funds within the meaning of § 523(a)(4).

The remaining step in the three-fold analysis is whether the nonpayment of contributions constituted a defalcation within the meaning of § 523(a)(4).

### C. Defalcation

The bankruptcy court did not reach the question of whether there was a defalcation. Instead, it ruled:

> While the parties focused on whether the debtor had, in fact, committed a defalcation within the meaning of [ ] § 523(a)(4), they incorrectly assumed that he was a fiduciary. I have held that he was not. As a result, [Raso] cannot prevail on the merits of this adversary proceeding....

*In re Fahey*, 470 B.R. at 659. Consequently, the record is devoid of findings of fact or conclusions of law with respect to whether the nonpayment of contributions constituted a defalcation within the meaning of § 523(a)(4).

### CONCLUSION

In view of the foregoing, we conclude that the bankruptcy court erred in determining that Raso failed to demonstrate that Fahey was acting in a fiduciary capacity, either as an ERISA fiduciary or as a fiduciary of a common law, technical trust. Accordingly, we **REVERSE** the order of the bankruptcy court and **REMAND** for further findings on the issue of whether the nonpayment of contributions constituted a defalcation for purposes of § 523(a)(4).

KORNREICH, Bankruptcy Judge, Dissenting.

I respectfully disagree with both of the conclusions expressed in the majority opinion. Fahey was not a fiduciary of a technical trust arising under ERISA. For that reason, and because no express trust is implicated, he was not a fiduciary under § 523(a)(4). Thus, as determined by the bankruptcy court, Fahey was entitled to judgment on Count II of the complaint brought by Raso.

I agree with the majority that: (a) Fahey had exercised authority and control over all of the assets of Zani as its sole shareholder and operating officer; (b) he was responsible for fulfilling Zani's contractual obligations to make contributions to the employee benefit funds controlled by Raso; and (c) the assets of the funds over which Raso exercised authority or control under ERISA included "contributions that are properly due and owing but not yet paid" by Zani as the contributing employer. My point of departure is that I view the property interest of the employee benefit funds in the unpaid contributions to have been a chose in action controlled by Raso. *See In re Luna*, 406 F.3d at

1203–4. Fahey exercised no authority or control over that chose in action. Therefore, the bankruptcy court was correct when it placed the onus for collecting the unpaid contributions on Raso.

Holding Fahey to be a fiduciary of the fund beneficiaries under an ERISA technical trust on these facts ignores the fiduciary duties he may have had to Zani's creditors under Massachusetts law. *See Seder v. Gibbs,* 333 Mass. 445, 131 N.E.2d 376, 380 (1956) ("directors [of an insolvent corporation] are to some extent trustees of the corporation property for the creditors"). Under this rule, self-dealing by the director of an insolvent corporation could be a breach of a fiduciary duty to general creditors. The majority decision places the responsible officer of an insolvent corporation in jeopardy of violating a state law fiduciary duty if he or she chooses to distribute corporate assets to employee benefit funds in an effort to avoid a judgment under § 523(a)(4). Ironically, such a distribution could give rise to a sustainable, nondischargeable claim under § 523(a)(4) for breach of a state law duty.

Unlike the Internal Revenue Code, which contains an express provision imposing breach of trust liability upon an individual who fails to pay withholding taxes, see 26 U.S.C. § 6672, ERISA contains no express provision imposing breach of trust liability upon an individual who fails to make corporate employee benefit contributions. We should not invent trust fund liability where none exists to punish a bad actor when doing so could press an honest debtor into violating a long established fiduciary duty to all general creditors. For this reason, I would affirm the bankruptcy court.